THOMAS W. ROBERTSON, Appellant, *v.* THE ONGLEY ELECTRIC COMPANY, Respondent.

*Corporation — presumed to know the law of the State creating it, but not that of other States — when an attachment is not "permitted" or "suffered."*

A corporation will be presumed to know the laws of the State under which it was created and to have made its contracts with reference to such laws, but such presumption does not extend to the laws of other States or of foreign countries.

A corporation cannot be said to have permitted or suffered an attachment to issue against its property, where the attachment was issued as a matter of right, because the corporation was a foreign corporation, in a State other than that under the laws of which the corporation was created, when the corporation did not even know that an application for an attachment was contemplated.

The sense in which the words "permit" and "suffer" are generally used imports that the doing of certain things may be permitted or suffered without an affirmative act, but that the thing cannot be "permitted" or "suffered" without an omission to do some act which might have prevented it; to permit or suffer an act usually implies the power to prohibit, prevent or hinder it.

Appeal by the plaintiff, Thomas W. Robertson, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 5th day of October, 1894, upon the decision of the court, rendered after a trial at the New York Special Term, dismissing the plaintiff's complaint.

*Henry W. Hardon* and *Treadwell Cleveland*, for the appellant.

*Rufus W. Peckham, Jr.*, for the respondent.

Parker, J. :

The trial court dismissed the complaint on the ground that the note upon which the plaintiff sought to recover had not matured when the action was commenced. The note reads as follows :

" $22,783.33.                        New York, *November 1st*, 1892.

" Two years after date we promise to pay to the order of Thomas W. Robertson twenty-two thousand seven hundred and eighty-three $\frac{33}{100}$ dollars at No. 1 Broadway, New York city.

" Value received.

" Number ——. With interest at five per cent, payable semi-annually. Due November 4, 1894.

                    " THE ONGLEY ELECTRIC COMPANY,
                                " By Geo. S. Hopkins,
                                        " *Vice-President.*"

The action was commenced April 4, 1893, some months before the due date of the note according to its terms. But at the time the note was given the defendant executed and delivered to the plaintiff, as collateral security for its payment, a chattel mortgage upon certain patents, accounts and chattels of the defendant. That instrument provided, among other things, that upon the happening of certain events the principal sum represented by the note should become instantly due and payable. One of the events named was that if the defendant should permit or suffer any attachment or

other process against its property to be issued the note should become at once due.

Two weeks prior to the commencement of this action a person claiming to be a creditor of this defendant (a New Jersey corporation doing business in the State of New Jersey, and having its general offices for the transaction of business in Jersey City) procured an attachment to be issued in this State, and levied upon certain property of the defendant within the State of New York. The plaintiff in the action in which the attachment was issued sought recovery against the defendant for certain commissions alleged to have been earned by selling its treasury stock. The defendant answered the complaint, denied the debt, and refused to pay. Before this trial that action was put on the short cause calendar for trial, but as the limit of time allowed for such causes was reached before the evidence was in, the result was that it went to the foot of the calendar under the rule. In such condition the action stood at the time of the trial of this cause. The situation, therefore, does not permit the court to infer that the issue of the attachment was due to a failure on the part of the defendant to pay, in the ordinary course of business, a meritorious claim.

The question, then, is, whether the issuing of an attachment in a State other than that under the laws of which the defendant was incorporated, and under the circumstances to which we have briefly referred, operated under the provision of the chattel mortgage to make the sum secured by the note at once due and payable. So much of the covenant relating to the events which should cause the note to become payable prior to the date of maturity fixed by its terms reads as follows :

" And the said party of the first part, for itself and its successors and assigns, covenants and agrees to and with the said party of the second part, his executors, administrators and assigns, that in case default shall be made in the payment of the said principal sum above mentioned, or in the payment of the interest thereon, or in case the said party of the first part shall, at any time before the day of payment herein provided for, remove the said goods, chattels and property or any part thereof, or permit or suffer any attachment or other process against property to be issued against it, or permit or suffer any judgment to be entered up against it, then the said princi-

pal sum above mentioned shall become instantly due and payable.
\* \* \* ”

If this provision be read without having in mind the circumstance which it is alleged caused this note to mature, it will suggest that the parties intended to cut down the time which the note should have to run only in the event of such happenings as should endanger the plaintiff's chances of making his claim out of the property of the defendant. It undertook to provide that in the event of a removal of the goods covered by the mortgage, whether by the voluntary act of the defendant, or through legal proceedings taken by a creditor, then the note should at once mature. In other words, the parties to that instrument apparently intended to relieve the payee of the note, and the mortgagee as well, from any possible embarrassment by reason of the length of credit, should the mortgagee voluntarily attempt to dispose of the property, or some creditor, by means of an attachment or judgment, should be about to effect its disposition in order to make his claim out of the defendant's property. A construction of this language which should make the note mature if an attachment should be obtained in another State or foreign country, would not seem to be in accord with the plan which the parties to the instrument had in mind. The defendant may be presumed to know the law of the State to which it owes its creation, and to have made its contract with reference to it, but there is no occasion for extending the presumption of knowledge to the law of other States or foreign countries. There is no suggestion that in its own State this attachment would have been issued if applied for. But in this State, the defendant being a foreign corporation, an attachment may issue against its property within the limits of the State, however solvent it may be, and however great its ability to pay all claims against it on demand. It is not within its power to prevent a creditor, or a fictitious claimant even, from obtaining an attachment against its property in this State. And the construction contended for would, of course, put it in the power of the mortgagee, if at all inclined to turn sharp corners in order to gain some advantage over his debtor, to cause the note to become due at once by procuring an attachment to be taken out by some person in another State or country than that of the defendant's residence.

Now, clearly, this was not what the parties intended, and we have to inquire whether the language employed, if reasonably construed, is not in accord with what seems to have been their desire at the time. It will be observed in the first place that it is not provided that the note shall become due in the event that an attachment shall be issued. The provision contains words of limitation in addition, words indicating that the attachment provided for was one for the issuing of which the defendant should be in some measure responsible because of its tacit consent or its neglect to discharge its just obligations. The attachment provided for is one that the defendant shall " permit or suffer " to be issued against it. Now, it is not contended that the defendant did any affirmative act to procure or permit the issuing of the attachment, but, having failed to prevent its issue, it is urged that the defendant permitted or suffered it to issue.

The learned counsel for the appellant concedes that if the word " permit " had been used alone there would be no opportunity for such construction of the instrument as that for which he contends. He urges, however, that the use of the words " or suffer " indicates that the parties intended to include the opposite of the ordinary meaning of the word permit. His argument is that the word " suffer " is undoubtedly used at times the same as " permit," but that it could not have been the intention of the parties to use the words in that sense in this contract, otherwise they would have been omitted because unnecessary. Therefore, it is urged that the meaning to be attached to the word " suffer " is to " tolerate," and thus the words " permit or suffer " should be read as " permit or tolerate ; " and if thus read it is contended the covenant would mean " if the attachment shall issue with the defendant's permission or without it."

We have already said that the appellant concedes that the defendant did not permit the attachment to issue.. " To permit " is " to consent, to allow or suffer to be done, to tolerate, put up with." A definition of the word " permit " most favorable to the plaintiff is that which imports only acquiescence or abstinence from prevention. It cannot be urged that the defendant acquiesced, for the evidence is to the contrary, and the act was one over which it had no control. The attachment issued against the property of the defendant as a matter of right, because the defendant was a foreign corporation,

and it cannot be said to have abstained from hindering without a suggestion in the record that the defendant knew that the plaintiff contemplated even an application to the court for a warrant of attachment. In all dictionaries "to permit" is given as one of the definitions of "suffer," and "to suffer" as one of the definitions of "permit." They are used synonymously. The sense in which these words are generally used imports that the doing of certain things may be permitted or suffered without an affirmative act, but that it cannot be done without an omission to do some act which might have prevented it. In other words, to permit or suffer an act usually implies the power to prohibit, prevent or hinder it. As we have already said, it does not appear that the defendant could have hindered it, for it does not appear that it was informed that an attachment was to be applied for until after it had been issued and levied upon the property. It may be said that it could have hindered it by paying the demand made upon it, whether right or wrong, whether there was anything due upon it or not. True, that might have been done, but certainly there was no occasion for the defendant to desist from its defense of the action brought against it until it had at least been threatened with an attachment in case it should continue to insist upon its defense. Whether it could have safely proceeded with its defense, after being warned that the consequences of it would be the issuing of an attachment, we need not consider, for it does not appear that it had reason to expect that the procuring of an attachment was even contemplated by the plaintiff in the action in which the attachment was issued before a levy was actually made under the attachment.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.