JESSE M. PURINTON & another *vs.* MARY JAMROCK.

<div align="center">Franklin.   March 21, 22, 1907. — April 2, 1907.</div>

<div align="center">Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.</div>

*Evidence,* Opinion.   *Adoption.   Parent and Child.   Illegitimacy.   State Board of Charity.   Statute,* Construction.   *Infant.   Religious Belief.   Constitutional Law.   Words,* "Suffer."

At the hearing of a petition for the adoption of an illegitimate child who is in the custody of the State board of charity, it is proper to exclude a resolution passed by that board declaring the principles to be followed by the board in finding suitable homes for children who owing to poverty or misfortune are in the care and control of the State.

On a petition for the adoption of an illegitimate child who is in the custody of the State board of charity, the consent of that board is not required by R. L. c. 154, §§ 2, 3, and if at the hearing of an appeal from a decree of the Probate Court on such a petition the record shows that in the Probate Court the board appeared by the Attorney General and neither consented nor objected to the adoption, the petition may none the less be granted.

Statutes relating to adoption are in alteration of the common law and must be followed strictly in all essential particulars.

Under the amendments to R. L. c. 154, § 2, made by St. 1902, c. 544, § 22 ; St.

1904, c. 302, the provision that in a petition for the adoption of a child "Illegitimacy shall in no case be expressly averred upon the record" does not prohibit such an averment by inference, and a description of the child to be adopted as the child of a single woman is not a violation of the statute.

*Semble,* that if a petition to the Probate Court for the adoption of a child contains an express averment of illegitimacy in violation of the prohibition contained in St. 1904, c. 302, this does not deprive the court of its jurisdiction to entertain further proceedings on requiring the striking out of the prohibited allegation.

Upon a petition for the adoption of an illegitimate child in custody of the State board of charity, under R. L. c. 154, § 3, which provides, among other things, that the consent of the mother of the child to the adoption shall not be required if she has suffered such child to be supported for more than two years continuously, prior to the petition, as a pauper by the Commonwealth, if it appears that the child was supported by the Commonwealth for more than six years continuously, including the two years immediately preceding the filing of the petition, that at the beginning of that period the child was taken from the mother by proceedings under R. L. c. 83, § 37, of which she was notified, on a complaint charging the mother with "neglect, crime, drunkenness or other vice," that she did not appear to have made any opposition to the adjudication by which the child was taken from her and took no appeal from that judgment, that she never sought to regain the custody of her child by application to the State board of charity under St. 1903, c. 334, § 3, and made only a few cursory inquiries, the latest of which was more than two years before the filing of the petition, a finding that she "suffered such child to be supported for more than two years continuously, prior to the petition," by the Commonwealth, is supported by the evidence, even assuming that the word "suffer" as used in the statute requires proof of acquiescence.

St. 1905, c. 464, § 1, in regard to the protection of minor wards of the Commonwealth in the religious belief of their parents, was enacted for the benefit of such children rather than for that of their parents, whose rights are regulated by the same principles as before its enactment.    Under it the mother of an illegitimate child has all the rights of other parents.

On a petition for the adoption of an illegitimate child nine years of age in the custody of the State board of charity, if it appears that the petitioners are a husband and wife of good character and education about forty years of age and childless, that they live in a small town in a comfortable home in a good and healthful neighborhood and reasonably may expect to be able to give the child a suitable support and education, that for over four years the child has been in the family of the petitioners, who are found to be suitable persons to have custody of her and charge of her education, that a strong affection has grown up between them, and that the interests of the child will be promoted greatly by the adoption, and if it appears that the child was taken from her mother by reason of the mother's misconduct and that the mother acquiesced in a judgment giving the custody of the child to the State board of charity and for several years suffered the child to be supported as a pauper by the Commonwealth, the fact that the mother is of a religious belief different from that of the petitioners, who intend to educate the child in their own religious belief, does not make the granting of the petition unlawful or improper.

The provisions of R. L. c. 154 in regard to the adoption of children are constitutional.    Parents have no absolute right of property in their minor children of which they cannot be deprived without their consent.

The right of property which parents have in their minor children is subject to

their correlative duty to care for and protect their children, and the law secures their right only so long as they discharge their obligation.

Where a child in the custody of the State board of charity is adopted legally by persons who are found suitable to have custody of him and charge of his education, the child under the provisions of St. 1903, c. 334, § 3, still remains in the custody of the State board of charity until he attains the age of twenty-one years or that board shall discharge him from its custody when the object of his commitment has been accomplished.

PETITION, filed in the Probate Court for the county of Franklin on April 25, 1905, by Jesse M. Purinton and Clara F. Purinton, his wife, both of Colrain, for the adoption of Kate Jamrock, a child of nine years of age at the time of the filing of the petition.

In the Probate Court *Thompson,* J. made a decree granting the petition. The respondent, Mary Jamrock, the mother of Kate Jamrock, appealed, assigning the following objections to the decree :

" First. That the respondent is the only parent of said child, and has never consented in writing or otherwise to said petition or decree, and that none of the conditions whereby such consent shall not be required, specified in R. L. c. 154, § 3, exist or have ever existed ; especially that said Mary Jamrock has not, as alleged in the petition of said Purinton, suffered her said child to be supported for more than two years continuously prior to the petition as a pauper by the Commonwealth, or as such by an incorporated charitable institution or city or town.

" Second. That the petition should be dismissed because it is alleged upon the record that said child is illegitimate, in that the petition alleges that said child is the child of a single woman, and such allegation is contrary to the provisions of law.

" Third. That the petitioner Jesse M. Purinton is not a fit person to be the adopted parent of said child, and that it will not be for the welfare of said child that said petition should be granted.

" Fourth. That the mother and sole legal parent of said child has always been a member of the Roman Catholic church, and that when said child was but a few days old she procured the child's baptism duly, and its reception into membership of the said church, and [said child] was brought up by her in the said church, and said mother has never consented to the child being

educated or trained in any other form or doctrine of any other religious belief.

" Fifth. That the said mother has a natural, inherent and constitutional right to be protected by the State in her prerogatives as the sole parent of said child, and cannot be deprived of them by reason of poverty or misfortune, nor can the State usurp, deprive, or declare forfeit the appellant's rights in and to said child, or transfer the possession of her perpetually to any other person without her consent.

" Sixth. That the petitioners are of a different religious faith from that of the mother of said child, and intend, if, their petition is granted, to educate said child in their own religious belief, and that it is the right of the appellant that said child, while of such tender years as to be herself incapable of exercising a rational choice in this respect, shall not be educated in a religion other than that of her mother, the appellant.

" Seventh. That the child is in the custody of the State board of charity under commitment by virtue of R. L. c. 83, § 37 ; that said board refuses to consent to the petition of said Purintons for the adoption of said child ; and that it is contrary to the purpose of such commitment that such petition should be granted without the consent of said board."

On appeal the case was heard by *Knowlton,* C. J. It appeared that at the time of the hearing Mary Jamrock was twenty-seven years of age and that she never had been married ; that she was born in Poland, and had lived for some years in Chicopee and Holyoke ; and that Kate Jamrock, the daughter of Mary Jamrock, was born on May 27, 1896. The findings of the Chief Justice are given below.

The respondent offered in evidence a resolution passed by the State board of charity on March 18, 1904, in regard to the placing out of illegitimate children in the custody of the board. This was excluded by the Chief Justice, and the respondent excepted. The excluded vote was as follows :

" Whereas, It has always been the desire of the members of this board to recognize, in the broadest spirit, the constitutional right of each citizen of the Commonwealth to worship God in the manner and season most conformable to the dictates of his own conscience, and to encourage and approve of the right of

parents, — whose children are, owing to poverty or misfortune, under the care and control of the State, — to claim that such children are also entitled to the practice, exercise, and observance of the religious profession and sentiments of their parents, without molestation, hindrance, or interference of any kind, —

"Now, therefore, as there appears to exist, in the minds of some citizens, a misunderstanding concerning the sentiments and views of this board as to its clear duty and course of action in the matter set forth in this preamble, be it

"Resolved, That the State board of charity, mindful of its obligations and duty toward the people of Massachusetts, and to reassure such of her citizens as may not be fully informed of the true position of the board on the question, declares that the members of this board hold unreservedly and unalterably to the constitutional right of every citizen and his family, — while they, or any of them, may be under the control or wardship of the State, by any process of law, and under the supervision of this board, — to be at liberty, at all stated and reasonable times, and subject to reasonable regulations, to have the consolation of instruction in their religion, and to worship God according to the dictates of their own conscience.

"Resolved, That the board declares, in pursuance of this opinion of its duty, that all employees under it, who are engaged in the work of assisting in finding suitable homes, in placing wards out in approved families, in visiting and inspecting the homes in which the wards of the State may be placed out, and in reporting on their condition and the condition of the homes and families, are enjoined to observe, and see to it, that the course of action prescribed by the board is strictly followed."

A recorded vote of the State board of charity relating to the removal of Kate Jamrock from the family of the petitioners and providing for a boarding place with a family of the same religious faith as that of her mother was offered in evidence by the respondent. This was admitted by the Chief Justice for the purpose of showing the action taken by the State board of charity in regard to the removal of Kate Jamrock from the family of the petitioners and for no other purpose. To the limited use of this evidence the respondent excepted.

At the close of the evidence the respondent requested the following rulings :

" 1. That the petition should be dismissed because the mother of said child never consented in writing or otherwise to said petition or decree, and that none of the conditions whereby such consent shall not be required, specified in R. L. c. 154, § 3, exist or have ever existed, especially that said Mary Jamrock has not, as alleged in the petition of said Purintons, suffered her said child to be supported for more than two years continuously prior to the petition as a pauper by the Commonwealth, or as such by an incorporated charitable institution or city or town.

" 2. That the mother and sole legal parent of said child has always been a member of the Roman Catholic church, and that as such she has a legal right to have her child brought up in the faith in which it was born.

" 3. That it is against the policy of this Commonwealth to give the care and custody of an infant of tender years to one who is of a different religious belief from that exercised by the legal parent without the consent of such parent.

" 4. That the said mother has a natural, inherent and constitutional right to be protected by the State in her prerogatives as the sole parent of said child, and cannot be deprived of them by reason of poverty or misfortune, nor can the State usurp, deprive, or declare forfeit the appellant's rights in and to said child, or transfer the possession of her perpetually to any other person without her consent.

" 5. That the petitioners are of a different religious faith from that of the mother of said child, and intend, if their petition is granted, to educate said child in their own religious belief; and that it is the right of the appellant that said child, while of such tender years as to be herself incapable of exercising a rational choice in this respect, shall not be educated in a religion other than that of her mother, the appellant.

" 6. That the child is in the custody of the State board of charity, under commitment by virtue of R. L. c. 83, § 37; and that said board refuses to consent to the petition of said Purintons for the adoption of said child, and that it is contrary to the purpose of such commitment that such petition should be granted without the consent of said board.

"7. Upon all the evidence in the case the petition cannot be maintained, and the decree of the Probate Court must be reversed."

The Chief Justice refused to rule as requested; and made the following findings of fact and order for a decree:

"The respondent, Mary Jamrock, contended at the outset that the court had no jurisdiction to grant the petition without her consent. The petitioners contend that her consent is unnecessary because she has suffered the 'child to be supported for more than two years continuously, prior to the petition, . . . as a pauper, by a city or town or by the Commonwealth.'

"It is an undisputed fact that the child has been supported by the Commonwealth for more than six years continuously, including the two years immediately prior to the filing of the petition in this case. Was this support by the Commonwealth support as a pauper within the meaning of the statute? On December 29, 1899, a complaint was made to the Police Court of Chicopee, under the R. L. c. 83, § 37, containing allegations in regard to this child and another younger child of Mary Jamrock as follows: 'By reason of orphanage or of the neglect, crime, drunkenness or other vice, of the parents' they 'are growing up without education or salutary control and in circumstances exposing them to lead idle and dissolute lives and are dependent upon public charity.' After due notice to the mother the court found these averments to be true, and committed the children to the custody of the State board of charities until they should arrive at the age of twenty-one years. From the findings in these proceedings, and from other evidence in the case which was received without objection, I find that Kate Jamrock was then dependent upon public charity. Evidence from the public records of the overseers of the poor of the city of Chicopee showing that the city furnished Mary Jamrock with aid as a pauper more or less for three years before this complaint was made, and that in the year 1899 they furnished it during every month in the year, was received *de bene*, subject to the objection of the respondent, and because of this objection I subsequently excluded these records and make my finding upon other evidence. The mother herself testified to having received aid from the public authorities for the support of herself and her children, at different times before this complaint was made.

"I rule that a child committed to the custody of the State board of charity under the R. L. c. 83, § 37, because dependent upon public charity, and afterwards supported at the expense of the Commonwealth under the commitment, is supported as a pauper within the meaning of R. L. c. 154, § 3. In that respect I think he is in the same relation to the Commonwealth as a child committed to the same custody or received under R. L. c. 83, §§ 20, 21, 36 or 25. It was not contended at the hearing that support so furnished was not support as a pauper.

"The next question is whether the mother 'suffered' this child to be so supported. I find that she did. She knew that the child was being so supported. She never afterwards made any real effort to furnish support herself, or to relieve the Commonwealth of its burden. Her testimony as to having asked three or four persons about the child and having received no answers, with the other evidence that she never did anything else in regard to the matter, shows that she suffered the support to be furnished. She testified that when she made these inquiries she could not speak English, and the evidence indicates that the only one of these persons, who could understand her, or whom she could understand, was the Polish priest. She never knew where these children were, or anything about them, from the time of their commitment until after this petition was filed.

"The respondent objects that the petition is in violation of the St. 1904, c. 302, which says that 'illegitimacy shall in no case be expressly averred upon the record.' If the expression 'child of Mary Jamrock, single woman' is in violation of the statute, which I do not decide, I do not think it deprives the court of jurisdiction or renders the petition fatally defective.

"The petitioners are about forty years of age, childless, and without expectation of having children of their blood. They live in a small town, in a comfortable home, in a good and healthful neighborhood. They are not possessed of a large property, but from their savings and earnings, with or without a possible inheritance, they reasonably expect to be able to give the child a suitable support and education. The petitioner, Clara F. Purinton, is a woman of exceptional fitness and unusual qualifications to become a parent of such a child by adoption. She was a teacher before her marriage, and by disposition

and temperament as well as education, she seems a proper person to perform the duties of a mother to this girl.

" The only objection made to the petitioner, Jesse M. Purinton, related to his use of intoxicating liquor. On this subject numerous intelligent and trustworthy witnesses were called who have known him well for a long time, all of whom gave him a very high character for industry, temperance, and sobriety. No witness was called who had ever seen him drink intoxicating liquor, or seen him intoxicated. . . . From all the evidence I find that he is a man of good character and reputation, trusted and esteemed among his neighbors, and that he is not addicted to the use of intoxicating liquor. I accordingly find that both of the petitioners are suitable persons to have the custody and education of the child.

" It was proved that during the years that the child had lived in the family of the petitioners they came to have a very strong affection for her, and that she showed much fondness for them. Since last July she has been away from them and has written nineteen letters to them.

" The evidence satisfies me that the interests of the child will be greatly promoted by granting the petition for adoption. In dealing with a petition of this kind I feel that the interests of the child should be the paramount consideration. She has no relatives from whom she can reasonably expect to receive any help. The petitioners ask to be permitted to make her their child by adoption, and to give her advantages equal, if not superior, to those of most children in the homes of respectable parents. The petition should be granted unless some good reason is shown to the contrary.

" It appeared that the petitioners are accustomed to attend the Baptist church, and that, during her stay in Colrain, the child had been a member of the Sunday school connected with that church. She was baptized in the Roman Catholic church. Her mother is a Roman Catholic, and she objects to having her child reared in a Protestant family. This objection is entitled to consideration, although it does not appear to be of great weight. The evidence tended to show that an appearance was entered for her by an attorney perhaps with a view to present this objection, before she knew of the petition, and before her

residence had been discovered, and that her subsequent action in the case is a ratification of an objection first made by others. Certainly her seeming indifference and her lack of any personal relations with her child for nearly six years, make her wishes on such a subject not so important as they otherwise would be.

" The Roman Catholic church and the Baptist church are both alike before the law. The court does not hold that the interests of a child will be promoted by education in either of these churches in preference to the other. The parent of the child and the friends of the child, in her interest, may naturally have their preferences, according to their respective beliefs. But if members of either church have taken an interest in this case as sectarians and promoters of the interests of their church, they have no proper place before the court, and will receive no recognition there. The law assumes that the child will be as well taught in one church as in the other, and that her future happiness is as likely to be promoted in one as in the other. The court, in looking to the interests of the child, will treat the churches as of equal merit, and will be governed by other than sectarian considerations. In a case of this kind, where the mother has lost her right under the statute to prevent adoption by refusing her consent, her wish in regard to the religious education of her child will not be treated as controlling.

" I decide that the petition should be granted, and I order the entry of a decree affirming the decree of the Probate Court."

The respondent alleged exceptions to the rulings of the Chief Justice and refusals to rule.

*M. Storey,* (*M. J. Sughrue & H. S. Davis* with him,) for the respondent.

*F. L. Greene,* for the petitioners. ~

SHELDON, J.  We think it manifest that the ruling by which the resolution passed by the State board of charity on March 18, 1904, was excluded was correct. Indeed, there has been no direct argument to the contrary, although, as this exception is referred to in the opening statement of the respondent's brief, we have not felt at liberty to treat it as waived. The views of the members of the board, stated in that resolution, however commendable in themselves were not material to any issues involved in the hearing. It was the duty of the court itself to

pass upon all disputed questions of law and of fact. *Brunelle* v. *Lowell Electric Light Corp.* 194 Mass. 407. Nor could this resolution be received to show that the board refused to consent to the adoption prayed for. No such consent was required by the statute; R. L. c. 154, §§ 2, 3; and the board had appeared in the Probate Court by the Attorney General and neither consented nor objected to the adoption. For the same reasons the effect of the vote of the board relating to the removal of Kate Jamrock from the family of the petitioners was properly limited; and it follows that the sixth request for rulings was rightly refused.

Statutes relating to adoption are in alteration of the common law and must be strictly followed in all essential particulars. *Foster* v. *Waterman,* 124 Mass. 592, 594, 595. *Johnson* v. *Terry,* 34 Conn. 259. *Watts* v. *Dall,* 184 Ill. 86. *Sarazin* v. *Union Railroad,* 153 Mo. 479. *Furgeson* v. *Jones,* 17 Ore. 204. *Ex parte Clark,* 87 Cal. 638. The child whose adoption is sought is illegitimate. It is provided by our statute that "illegitimacy shall in no case be expressly averred upon the record." R. L. c. 154, § 2. Sts. 1902, c. 544, § 22; 1904, c. 302. This petition describes the child as the "child of Mary Jamrock, a single woman." The respondent contends that this is an express averment of illegitimacy within the meaning of the statute, and that this violation of the statute makes the petition incurably bad and avoids the whole proceeding; that the defect is like that which was considered in *McDonald* v. *Green,* 176 Mass. 113, and accordingly that no valid decree of adoption could be made.

Assuming that this contention is open to the respondent upon these exceptions, in our opinion it cannot be sustained. The present statute is a substitute for the original provision of R. L. c. 154, § 2, that the fact of illegitimacy should in no case appear upon the record. This change of language must be presumed to have been made advisedly. There is a plain distinction between forbidding a fact to appear upon the record by inference or otherwise, and forbidding the pleader from making an express averment of that fact. If the statute had required an express averment of illegitimacy to be made, an inferential averment like that in question would not have been sufficient at common law. *Atwood* v. *Caswell,* 19 Pick. 493. *Salt Lake City National*

*Bank* v. *Hendrickson*, 11 Vroom, 52, 56. *Mower* v. *Burdick*, 4 McLean, 7. *Wadhams* v. *Swan*, 109 Ill. 46. It is at most an inferential statement only, not such an express averment as the statute forbids. Nor, if this were otherwise, should such a defect deprive the court of its jurisdiction or make further proceedings upon the petition impossible. The Probate Court might if it chose order the words " single woman " to be stricken out of the petition. In the authority over the making up of the record given to it by R. L. c. 162, § 35, it might prevent the final recording of any such averment. It is not every minor error that can deprive the court of jurisdiction. *Sewall* v. *Roberts*, 115 Mass. 262. *Edds, appellant,* 137 Mass. 346. The very statute which makes this prohibition provides for obtaining the consent " of the mother only if the child is illegitimate," and thus seems to contemplate some reference to that fact. It may have been for this reason that only the express averment of illegitimacy was forbidden.

The first request rightly was refused, upon the finding that the mother, for more than two years continuously prior to this petition, had suffered her child to be supported as a pauper by the Commonwealth. R. L. c. 154, § 3. Unless on the evidence this finding was erroneous as a matter of law, it must stand; for the case comes before us only on exceptions, without any appeal. It is not contended that the child was not supported as a pauper. *Opinion of the Justices,* 11 Pick. 538. The respondent's contention is that this finding was erroneous, because the proceedings by which the child was committed to the custody of the State board of charity and supported by the Commonwealth were adversary to her, that she was unable to resist them, that she did not acquiesce in them, and accordingly that she cannot properly be said to have " suffered " her child to be supported by the Commonwealth. She contends that the word " suffer " implies not merely non-resistance to that which is done, but also an approval of or at least an acquiescence in it, with an ability to prevent it; and that she cannot be said to have suffered her child to be so supported unless she either approved of this result or failed to make reasonable efforts to prevent it. To show that this is the meaning to be put upon the word " suffer " she cites, among other cases, *Hobson* v. *Middle-*

ton, 6 B. & C. 295; *Bosley* v. *Davies,* 1 Q. B. D. 84; *Gregory* v. *United States,* 17 Blatchf. 325; *Selleck* v. *Selleck,* 19 Conn. 501; *Robertson* v. *Ongley Electric Co.* 82 Hun, 585; *Commonwealth* v. *Fourteen Hogs,* 10 S. & R. 393; *Collinsville* v. *Scanland,* 58 Ill. 221. But, if we assume without deciding that this is the meaning of the word "suffer" as used in this statute, as it seems to have been assumed at the hearing, yet the facts found and the testimony are ample to show that she did so acquiesce in the support of her child as a pauper. She had made only a few cursory inquiries, the latest of which was much more than two years before the filing of the petition. She does not appear to have made any opposition to the adjudication by which the child was taken from her, although notified of the proceedings. She took no appeal from that judgment. She never has sought to regain the custody of her child by application to the State board of charity under St. 1903, c. 334, § 3. *Wares, petitioner,* 161 Mass. 70. The very complaint upon which the adjudication was made charges, not the poverty of the mother, but her "neglect, crime, drunkenness or other vice." It rested upon what must now be taken to have been her voluntary acts and omissions. On all the evidence, we are satisfied that the finding made was fully warranted.

The other requests for rulings seem to us to have been disposed of by the findings. It is undoubtedly the general policy of the Commonwealth to secure to those of its wards who are children of tender years the right to be brought up, where this is reasonably practicable, in the religion of their parents. St. 1905, c. 464, § 1. But it is the right of the children that is protected by this statute. The rights of the parents are still regulated by the same principles as before. The mother of an illegitimate child has doubtless all the rights of other parents. *Wright* v. *Wright,* 2 Mass. 109. *Barnardo* v. *McHugh,* [1891] A. C. 388. *Regina* v. *Nash,* 10 Q. B. D. 454. *Rex* v. *New,* 20 T. L. R. 583. *Kerrigan* v. *Hall,* 4 Fraser, Ct. of Sess. 10. But in such a case as this it is not the rights of the parent that are chiefly to be considered. The first and paramount duty is to consult the welfare of the child. The wishes of the parent as to the religious education and surroundings of the child are

entitled to weight; if there is nothing to put in the balance against them, ordinarily they will be . decisive. If, however, those wishes cannot be carried into effect without sacrificing what the court sees to be for the welfare of the child, they must so far be disregarded. The court will not itself prefer one church to another, but will act without bias for the welfare of the child under the circumstances of each case. This is the fair consensus of judicial opinion, although a difference of circumstances has caused the use of different expressions and the reaching of different results in the different cases. As was said in substance in *F.* v. *F.*, [1902] 1 Ch. 688, the parents' religion is *prima facie* the infant's religion, and the infant should be brought up in that religion and protected against disturbing influences from persons of a different religious faith; but the infant's welfare must be first of all regarded and its requirements must be treated as paramount. See *Stourton* v. *Stourton*, 8 DeG., M. & G. 760; *Davis* v. *Davis*, 10 W. Rep. 245; *In re Nevin*, [1891] 2 Ch. 299; *In re McGrath*, [1892] 2 Ch. 496; *S. C.* (on appeal) [1893] 1 Ch. 143; *In re Meades*, Ir. R. 5 Eq. 98; *Matter of Jacquet*, 40 N. Y. Misc. 575; *Matter of De Marcellin*, 24 Hun, 207; *In re Turner*, 4 C. E. Green, 433. Cases like *The Queen* v. *Williams*, 58 L. J. (N. S.) Q. B. 176, *The Queen* v. *Barnardo*, 58 L. J. (N. S.) Q. B. 522, and *The Queen* v. *Clarke*, 7 El. & Bl. 186, in which the return of a child to a parent who had lost no right was opposed by reason of a difference in religious belief, have no application here. In the present case the child had been for over four years in the family of the petitioners; they were found to be suitable persons to have her custody and education; a strong affection had grown up between her and them; her interests will be greatly promoted by the adoption. Under these circumstances the second, third and fifth requests were rightly refused.

Nor could the fourth request have been given. We do not regard the constitutionality of the provisions of R. L. c. 154, as to adoption, as now open to question. This was assumed in *Stearns* v. *Allen*, 183 Mass. 404. Similar statutes have been held to be constitutional in other States. *In re Stevens*, 83 Cal. 322. *State* v. *Meyer*, 63 Ind. 33. *Nugent* v. *Powell*, 4 Wyo. 173. *Van Matre* v. *Sankey*, 148 Ill. 536. The decision

in *People* v. *Congdon*, 77 Mich. 351, turned upon another question. Nor have the parents any inherent right of property in their minor child, of which they can in no way be deprived without their consent. They are the natural guardians of their child, entitled to its custody, with the right to appropriate its earnings, and may recover damages for any interference with their rights by a wrongdoer. *Horgan* v. *Pacific Mills*, 158 Mass. 402. But this right is not an absolute and uncontrollable one. It will not be enforced to the detriment or destruction of the happiness and well being of the child. See the strong opinion of Brewer, J. in *Chapsky* v. *Wood*, 26 Kans. 650. The same doctrine is laid down in *Clark* v. *Bayer*, 32 Ohio St. 299, 310. As the child owes allegiance to the government of the country of its birth, so it is entitled to the protection of that government, which must consult its welfare, comfort and interests in regulating its custody during its minority. *Mercein* v. *People*, 25 Wend. 64, 103. *United States* v. *Green*, 3 Mason, 482, 485. The right of the parents is not an absolute right of property, but is in the nature of a trust reposed in them, and is subject to their correlative duty to care for and protect the child; and the law secures their right only so long as they shall discharge their obligation. *Nugent* v. *Powell*, 4 Wyo. 173. *Gishwiler* v. *Dodez*, 4 Ohio St. 615. *Ex parte Crouse*, 4 Whart. 9, 11.

Nor has this mother been discriminated against by reason of her poverty. It appears that she was employed in a cotton mill; and there is nothing to overcome the presumption that she was able to support her child. The custody of her child was taken from her by reason of her misconduct; she has acquiesced in this, and for several years has suffered the child to be supported as a pauper by the Commonwealth. Under these circumstances, the statute may properly provide that her consent to its adoption shall not be necessary. *Wellesley* v. *Wellesley*, 2 Bligh, (N. S.) 124, 129, 133. *In re Moore*, 11 Ir. C. L. 1. See the statutes and cases cited in 1 Am. & Eng. Encyc. of Law, (2d ed.) 729, and in 1 Cyc. 922.

Accordingly the fourth request could not have been given.

We have treated the questions arising upon these exceptions as if the effect of this decree of adoption would be to entitle

the petitioners at once to the custody and control of the child. But in this case she is still in the custody of the State board of charity, and apparently will remain so until she shall come of age or that board shall consider the object of the commitment accomplished. St. 1903, c. 334, § 3. *Wares, petitioner,* 161 Mass. 70.

<div align="right">

*Exceptions overruled.*