COMMONWEALTH *vs.* WILLIAM DEE.

Worcester.   October 4, 1915. — November 22, 1915.

Present: RUGG, C. J., LORING, DE COURCY, PIERCE, & CARROLL, JJ.

*Neglected Children.   Pauper.   Words,* "Neglect."

Under the provision of St. 1903, c. 334, as amended by St. 1909, c. 181, that "upon a complaint made by any person that any child under sixteen years of age . . . by reason of orphanage or of the neglect, crime, cruelty, insanity or drunkenness, or other vice of its parents, is growing up without education or without salutary control, or without proper physical care, or in circumstances exposing him to lead an idle and dissolute life, or is dependent upon public charity," such child by proceedings under that statute may be committed to the State board of charity, or be otherwise provided for, a child of a widow that is dependent upon public charity only by reason of the poverty of his mother, without any culpability on her part, is not a neglected child within the meaning of the statute.

COMPLAINT, received and sworn to in the Central District Court of Worcester on May 15, 1912, under St. 1903, c. 334, as amended by St. 1909, c. 181, by the clerk of the overseers of the poor of the city of Worcester, charging that the defendant, a boy under sixteen years of age, by reason of the neglect of his parents was dependent upon public charity, and praying that he might be dealt with according to law.

The Central District Court of Worcester found that the defendant was a neglected child and ordered that he be committed to the State board of charity.   That board, in behalf of the defendant, appealed from the order of the Superior Court under St. 1903, c. 334, § 6.

In the Superior Court the case was heard by *Aiken,* C. J., who found the facts which are stated in the opinion.   He found that the defendant was not a neglected child within the meaning of the statute and ordered that the complaint be dismissed. Thereupon the Chief Justice reported the case for determination by this court.   If the finding was in accordance with St. 1903, c. 334, as amended by St. 1909, c. 181, the finding and the order dismissing the complaint were to be affirmed; otherwise, the order of the Central District Court of Worcester committing the de-

fendant to the custody of the State board of charity was to be affirmed or such other order was to be made as should be made.

*E. R. Sparrow,* (*H. C. Attwill,* Attorney General, with him on the brief,) for the defendant and the State board of charity.

*E. H. Vaughan,* for the Commonwealth, submitted a brief.

DE COURCY, J.   In January, 1912, a widow with two children, one of them twenty-one months and the other (this defendant) between three and four years old, after earnest but unavailing effort to get employment, applied for aid to the overseers of the poor of Worcester.   Thereupon they were placed in the almshouse until April, when a position was secured in a family for the mother with the younger child.   Before January, 1912, she always had supported the children by doing work; and the Chief Justice of the Superior Court, in the trial of the present complaint, found that until going to the almshouse the defendant "was properly clothed and fed by the mother, and affectionately cared for, and there was nothing in the case to indicate that the child suffered by reason of any failure on the part of the mother to do what a mother should."

The question raised by the report is whether the finding of the court, that the defendant was not a neglected child, was in accordance with St. 1903, c. 334, as amended by St. 1909, c. 181. The first section of the statute, so far as material to the present inquiry, reads as follows: "Section 1.   A police, district or municipal court or a trial justice, upon a complaint made by any person that any child under sixteen years of age within its or his jurisdiction, by reason of orphanage or of the neglect, crime, cruelty, insanity or drunkenness, or other vice of its parents, is growing up without education or without salutary control, or without proper physical care, or in circumstances exposing him to lead an idle and dissolute life, or is dependent upon public charity, may issue a precept to bring such child before said court or trial justice, and shall issue a notice to the State board of charity and shall also issue a summons requiring the board or person to whom such notice or summons is directed to appear before said court or trial justice at the time and place stated in the notice and summons, to show cause why such child should not be committed to the State board of charity, or be otherwise provided for."

The complaint alleges that William Dee "by reason of the

neglect of his parents is dependent upon public charity." The complainant recognizes that mere dependence upon public charity does not bring a child within the operation of the statute, but that it must further appear that such dependence was caused by "the neglect, crime, cruelty, insanity or drunkenness, or other vice of its parents." It does contend, however, that the defendant's dependence upon public charity, shown to exist in this case, was due to his mother's "neglect," when she in fact failed to support him, regardless of whether her failure was wilful and intentional or was due to inability on account of her poverty.

If the word "neglect" were the exact symbol of an unchangeable idea, the meaning of the statute would be too clear for controversy. But this word, like very many in the language, is susceptible of a variety of significations. This is apparent not only from the definitions in the standard dictionaries, but from the decisions of various courts where it has been necessary to consider the sense in which the word was used in different statutes. See 5 Words & Phrases, 4740; 3 Words & Phrases (2d series) 551, and cases cited. Its meaning in the statute under consideration must be determined by examining the context, and the history and purpose of this "neglect" law.

It seems plain from the entire text that the Legislature used the word in the sense which imports some kind of culpability in the conduct of, or at least an intentional non-performance of duty by, the parent from whose custody the child is to be taken. "Neglect" is used in connection with "crime, cruelty, insanity or drunkenness, or other vice" on the part of the parents; and "insanity" was not embodied in the original act. *Noscitur a sociis.*

The history of the statute confirms this view. The language above quoted as to what children may be committed is substantially the same as that of the original enactment (St. 1866, c. 283) except that the clause "or is dependent upon public charity" was first embodied in the law by St. 1882, c. 181. See Sts. 1898, c. 496, § 35; 1900, c. 397, § 2. In the original act it was provided that the child might be restored to its parents whenever it should be satisfactorily proved that they "shall have reformed and are leading orderly, and industrious lives, and are in a condition to exercise salutary parental control over their children, and to provide them with proper education and employment." St. 1866,

c. 283, § 4. This provision was continued in the Pub. Sts. c. 48, § 21, and appears again in St. 1894, c. 498, § 29. It strongly indicates that the purpose of the "neglect law," as it usually is designated, was to provide for the removal of children from those parents who are undesirable and unfit, and not from parents who are merely poor. And while the clause in controversy has not been before this court for interpretation, this statute was involved in the case of *Purinton* v. *Jamrock*, 195 Mass. 187, and the following language in the opinion by Sheldon, J., is significant: "The very complaint upon which the adjudication was made charges, not the poverty of the mother, but her 'neglect, crime, drunkenness or other vice.' It rested upon what must now be taken to have been her voluntary acts and omissions" (at page 199). And again (at page 201): "Nor has this mother been discriminated against by reason of her poverty. It appears that she was employed in a cotton mill; and there is nothing to overcome the presumption that she was able to support her child. The custody of her child was taken from her by reason of her misconduct."

If further confirmation were needed for our interpretation of the word "neglect," it would be found in the distinction long recognized by the Legislature in its classification and treatment between pauper or dependent children on the one hand and neglected children on the other. The original of this very statute was entitled "An Act relating to indigent and neglected children." St. 1882, c. 181. While the third section provided for the commitment of neglected children, using the word in the same sense as in the present statute, the second section dealt with poor and indigent children. And it is to be noted that under its provisions "neglected" children were to be committed by order of the court, while the State board was authorized to commit pauper children. The same distinction appears in St. 1900, c. 397, — § 1 providing for children dependent upon public charity, and § 2 (as subsequently amended) being the neglect law now under consideration. Later we find the same distinction embodied in R. L. c. 83, §§ 36, 37, respectively. The provisions for the care of "pauper children" now appears as St. 1911, c. 490, § 2, while that with reference to "neglected children" is St. 1909, c. 181, here in question.

And this differentiation in classification and treatment be-

tween destitute or dependent children and those who are neglected or are delinquent or wayward, is but a recognition of the fundamental difference in fact. Whether considered from the standpoint of the dependent child or of the parent entitled to its custody and care but temporarily and unavoidably disabled from providing for its support, a grave injustice would be done to such innocent victims of poverty by bringing them into court with its stigma of criminality. See, as to delinquent and wayward children, St. 1906, c. 413; and as to truants, R. L. c. 46, § 11.

The facts here disclosed present a case for relief by public agencies. It is not for us to suggest what provisions of the statutes were applicable to these facts, as that question is not before us for determination. In accordance with the report, the finding for the defendant and the order dismissing the complaint must be affirmed.

*So ordered.*