WILLIAM LEMKE, APPELLEE, V. ANNA GUTHMANN, APPELLANT.

FILED NOVEMBER 10, 1920, No. 21593.

Habeas Corpus: CUSTODY OF CHILD. In habeas corpus proceedings to determine the right to possession of a nine-year-old boy as between father and an aunt, where it appears that the aunt took the child when he was a week or two old, and for nine years has cared for and brought him up in her home, which is pleasant and suitable for bringing up children, the father paying for his support, this court will decide the case in accordance with the right of the father and with regard to the best interest of the child. *Held*, that it is for the best interest of the child to leave him where he is in the home of the aunt, and to place the responsibility of the boy's educational and religious training under the direction and control of the father.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Reversed, with directions.*

*Matthew Gering,* for appellant.

*Charles E. Matson, contra.*

ALDRICH, J.

This is a proceeding in habeas corpus where plaintiff seeks possession of his nine-year-old son, who has been living with defendant at Plattsmouth. The father, plaintiff herein, visited his son several times a year at the home of Anna Guthmann, defendant.

The father is a well-to-do farmer of Lancaster county, living at Walton. Since the death of his wife he has not

remarried nor employed a housekeeper. Paul, his nine-year-old son, is the subject of this contest. Plaintiff has lived on his farm since the death of his wife with his oldest son, a boy of sixteen years of age. The father sent his two children living near his home to school and to the Lutheran church, while Paul, who was living with defendant, attended Catholic church and parochial school. The plaintiff herein is a Protestant and defendant is of the Catholic faith.

The child in question, Paul Lemke, has been reared in a fine home and pleasant surroundings and tenderly cared for by the defendant, who is so positioned that she can give to this boy the comforts and even luxuries that go with a well-furnished and well-kept home. The issue concerning the final disposition of this boy is whether we should permit him to be deprived of this home and its comforts and removed to unknown surroundings and influences. This kind of a home to a boy who stands at the threshold of manhood's estate is the most important factor in making him the kind of a man that he may be throughout the years of his life. The home influence in moulding character and developing the child mentally and in his disposition and otherwise cannot be overestimated. The foster mother in nurturing and bringing this boy up has certainly performed a mission that many an own mother might envy. She could not have treated her own flesh and blood more tenderly and affectionately than she has this boy, and the father owes her a lasting debt of gratitude for the splendid bringing up she has accorded his child. It should not be overlooked that this foster mother took this tiny babe when he was in the most delicate and feeble condition possible. With loving care and tender hands she nursed him through all these years, and we think saved his life and brought him into the vigorous, healthy condition that he enjoys today.

However, we should not be unmindful of the parental love of the father, which is entitled to recognition and respect, and by the rules of society in this situation the

Lemke v. Guthmann.

father, as a matter of law, has the first claim upon this child. The question is, what is for the best interests of this child, and what is the right and just thing to do in the promotion of his education and his general welfare? Unfortunately this splendid woman and the father of this child are diametrically opposite in their religious faith. We are not here to say which one is right. Possibly both may be not so far apart in matter of principle as one would think. But all this is beside the mark. Ordinarily the father has the right to determine what shall be the education and religious instruction given to his child. *Purinton v. Jamrock,* 195 Mass. 187, 18 L. R. A. n. s. 926. And, because of the home which defendant affords this boy, we have decided to leave him where he is, on condition that she permits the father to control his educational and religious training. We do not think it is for the best interest of the child at this particular time to completely break in upon his surroundings. The father never entirely surrendered his rights to this child, and can, if he chooses, exercise parental control over the educational and religious training to be given him. Upon arriving at the age of sixteen years the child may select his own home.

So much, then, of the judgment of the district court as is in conflict with the principles expressed in this opinion is reversed.

Reversed, with the exception that the educational and religious training is to be and remain under plaintiff's direction and control.

JUDGMENT ACCORDINGLY.

MORRISSEY, C. J., not sitting.