## ADOPTION OF BROOKE.

No. 96-P-1416.

Worcester. April 10, 1997. - May 21, 1997.

Present: WARNER, C.J., SMITH, & LAURENCE, JJ.

*Adoption,* Parent's consent. *Parent and Child,* Adoption. *Practice, Civil,* Assistance of counsel. *Religion. Religious Freedom Restoration Act. Constitutional Law,* Parent and child. *Words,* "Surrender."

In an action to dispense with parental consent to adoption of a minor under G. L. c. 210, § 3, the mother had no right to designate the religion of the adoptive parents, where the provisions of G. L. c. 210, § 5B, were inapplicable because the mother did not "surrender" the child [681-682]; further, the mother's rights under art. 2 of the Massachusetts Declaration of Rights were not violated where her consent to the adoption was not required [682-683].

In a proceeding under G. L. c. 210, § 3, to dispense with parental consent to adoption, the mother did not demonstrate that her rights under the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb-1 to 2000bb-4 (1994), were violated by the placement of the child in an adoptive home not of the mother's expressed religious preference, where the Commonwealth had a compelling governmental interest in acting in the best interests of the child in circumstances where the mother's rights with respect to the child had been terminated. [683-684]

On appeal from a probate judge's decree dispensing with the need for a mother's consent to the adoption of her child, the mother did not demonstrate that her counsel was ineffective for failing to raise issues regarding the alleged violation of the mother's statutory and constitutional rights when the child was placed in an adoptive home that was not of the mother's expressed religious preference. [684-685]

PETITION filed in the Worcester Division of the Probate and Family Court Department on April 4, 1994.

The case was heard by *Arline S. Rotman,* J.

*Thomas M. Harvey* for the mother.

*Ann Balmelli O'Connor* for the Department of Social Services.

*Carol A. Erskine* for the child.

WARNER, C.J. The mother[1] appeals from a decree dispensing with the need for her consent to the adoption of her child, Brooke. We must decide whether her counsel was ineffective[2] in failing to assert at trial that the Department of Social Services (department), by placing Brooke in a non-Christian preadoptive home despite her Catholic mother's request to the contrary, violated the mother's rights under: (1) G. L. c. 210, § 5B; (2) art. 2 of the Massachusetts Declaration of Rights; and (3) the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb-1 to 2000bb-4 (1994). The mother does not challenge either the judge's findings as clearly erroneous or the judge's determination of her unfitness under G. L. c. 210, § 3, to meet the needs, welfare, and best interests of Brooke.

First, we conclude that the mother's rights were not violated under G. L. c. 210, § 5B, as amended by St. 1970, c. 404, § 3, which in relevant part provides:

> "If, at *the time of surrender of the child for adoptive custody*, the parent or parents of said child requested a religious designation for the child, the court may grant a petition for adoption of the child only to a person or persons of the religious designation so requested, unless a placement for adoptive custody based on such request would not have been in the best interests of the child" (emphasis supplied).

In this case, we decline to adopt the mother's proposed meaning of "surrender" under § 5B, which would include the involuntary foreclosure of her consent to Brooke's adoption due to the decree dispensing with her consent to adoption under G. L. c. 210, § 3. We construe "surrender" under G. L. c. 210, § 5B, instead, to have the same meaning as defined in the form required by G. L. c. 210, § 2: by written consent, "voluntarily and unconditionally surrender[ing] [the child] to the care and custody of [the agency or person receiving custody] for the purpose of adoption . . . waiv[ing] notice of any legal proceeding affecting the custody, guardianship,

---

[1]The mother named a father, but no one claiming to be the father appeared in opposition to the petition.

[2]We note that the preferred method for bringing claims of ineffective assistance of counsel is to file a motion for a new trial, and that in the usual circumstance we do not reach such claims on direct appeal. See *Care and Protection of Stephen*, 401 Mass. 144, 150 (1987).

adoption or other disposition of [the child]." See *Beeler* v. *Downey*, 387 Mass. 609, 617 (1982) ("where words are used in one part of a statute in a definite sense, they should be given the same meaning in another part of the statute"); *Whitehall Co.* v. *Alcoholic Bevs. Control Commn.*, 7 Mass. App. Ct. 538, 540 (1979) ("[W]here the Legislature uses the same words in several sections which concern the same subject matter, the 'words must be presumed to have been used with the same meaning in each section' " [citations omitted]). See also G. L. c. 4, § 6. Thus, while a parent surrendering a child in this manner under G. L. c. 210, § 2, has a right to designate the religion of the child's adoptive parents, a parent's rights with regard to the child, including designating the child's religion, are terminated once a decree has been entered dispensing with the need for the parent's consent to adoption under G. L. c. 210, § 3. Here, the mother did not "surrender" Brooke and, accordingly, her expressed preference that Brooke be placed in a Christian home is not binding. Cf. *Purinton* v. *Jamrock*, 195 Mass. 187, 199-200 (1907) ("In such a case as this [where consent to adoption is not required], it is not the rights of the parent that are chiefly considered").[3]

In any event, the judge did consider the mother's religious preference for Brooke's placement and made findings as to the potential Christian homes that the department had considered for Brooke. The judge found that prior to placing Brooke in her current Jewish pre-adoptive home, the department attempted to accommodate the mother's religious preference regarding Brooke by considering five Catholic or Christian households, some of whom it deemed inappropriate for Brooke and some of whom withdrew from consideration.

Second, the mother's claim under art. 2 of the Massachusetts Declaration of Rights is unavailing. Under an earlier version of G. L. c. 210, § 5B, as inserted by St. 1950, c. 737, § 3, which required that a child be placed with a family of the same religious faith as that of the child "when

---

[3]At the time, St. 1905, c. 464, § 1, protected the rights of children to practice the religion of their parents. See *Purinton* v. *Jamrock*, *supra* at 199. The Commonwealth attempted to place children, when "reasonably practicable," with families that practiced the religion of the children's parents. *Ibid.* "The first and paramount duty [however, was] to consult the welfare of the child."

practicable," the Supreme Judicial Court held that a mother's right to select the religion of the home in which her child would be placed, in the context of a consented-to adoption, did not make the statute unconstitutional under art. 2 because: "All religions [we]re treated alike. There [wa]s no 'subordination' of one sect to another. No burden [wa]s placed upon anyone for maintenance of any religion. No exercise of religion [wa]s required, prevented, or hampered." *Goldman, petitioner*, 331 Mass. 647, 652 (1954), cert. denied, 348 U.S. 942 (1955). Further, the court noted, "The moment an adoption is completed all control by the mother comes to an end." *Ibid.*

Similarly, we see no State constitutional barrier when the mother's preferences with respect to religion are not adhered to where her consent to the adoption was not required. The current version of § 5B grants parents rights, in certain circumstances, that they did not have under the prior version of the statute. Now, § 5B focuses on the rights of parents in consensual adoptions. Again, all religions are treated alike and no exercise of religion is hampered. The mother's rights end, in cases such as this, at the moment her consent to adoption is no longer required.

Third, we are not convinced that the mother's rights under the RFRA were violated. The RFRA, which applies to both Federal and State law, whether adopted before or after its enactment in 1993, provides that the government may only substantially burden a person's exercise of religion under a rule of general applicability if it "demonstrates that application of the burden to the person — (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1 (1994). Courts which have found that the RFRA protects a parent's own exercise of religion and its effect on his or her child, have done so in circumstances where the parent's rights with respect to the child have not been terminated.[4] See *In Re Marriage of Weiss*, 42 Cal. App. 4th 106, 112-115 (1996) (in a case where the parents had joint legal and physical custody, the court refused to enjoin either parent from discussing religion with the child or involving the child in his or her religious activities where there was no showing that the child would be thereby harmed,

[4]The child did not raise the issue in her own right.

each parent had parental authority during lawful periods of custody or visitation and no harm could be presumed from a mixed religious upbringing). See and compare *Goodall* v. *Stafford County Sch. Bd.*, 60 F.3d 168 (4th Cir.), cert. denied, 116 S. Ct. 706 (1995) (the court ruled that the parents' economic burden of providing their hearing-impaired child with required cued speech services because they sent the child to a private religious school which did not receive such services funded by the county, did not substantially burden the parents' free exercise of religion under the RFRA).

In our view, the mother's own exercise of religion was not burdened where her rights with respect to the designation of the religion of her child's adoptive parents were terminated when she did not surrender the child for adoption, a decree dispensing with the need for her consent to adoption was entered, and the child was placed with pre-adoptive parents of a religion different from her own. However, we need not reach this issue because the State has a compelling governmental interest in protecting and pursuing the best interests of the child. Further, since the Commonwealth did attempt to find a family of the same religious faith as that of the child, there is no evidence of any less restrictive means of pursuing Brooke's interests in being placed with a responsible and nurturing family. See and compare *Petition of Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 587-588 (1981) ("The State as parens patriae may act to protect minor children from serious physical or emotional harm. . . . In such matters 'the first and paramount duty of courts is to consult the welfare of the child' ") (citations omitted); *Adoption of Hugh*, 35 Mass. App. Ct. 346, 353 (1993) ("Recognition of important parental rights does not change the crucial fact that the focus of the proceeding [to dispense with consent to adoption] should be on the best interests of the child") (citation omitted). See also *Prince* v. *Massachusetts*, 321 U.S. 159, 166 (1944) ("the family itself is not beyond regulation . . . [a]nd neither rights of religion nor rights of parenthood are beyond limitation").

We conclude, therefore, that there is no merit to the mother's claim of ineffective assistance of counsel due to counsel's failure to raise at trial the mother's religious issues under G. L. c. 210, § 5B, art. 2 of the Massachusetts Declaration of Rights, and the RFRA, because the failure to raise

those issues did not fall "measurably below that which might be expected from an ordinary fallible lawyer" and "likely deprive[] the [mother] of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974).

*Decree affirmed.*