---

### In re ANTONOPULOS.

(Supreme Court, Appellate Division, Second Department.　February 28, 1916.)

1. INFANTS ⬅18—CUSTODY AND PROTECTION—JURISDICTION OF CHILDREN'S COURT.

　　Under Penal Law (Consol. Laws, c. 40) § 486, subd. 2, providing for the care of certain classes of minors, a Children's Court has jurisdiction of a proceeding to commit children neglected by their parents to an institution, and the proceeding will be regarded, under Laws 1910, c. 659, § 39, as

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

for the benefit of the child to afford him the care and protection of the state.

[Ed. Note.—For other cases, see Infants, Cent. Dig. § 18; Dec. Dig. ⬥⟲18.]

2. ADOPTION ⬥⟲12—JUDICIAL PROCEEDINGS—NOTICE—"JUDICIALLY DEPRIVED OF CUSTODY."

Under Domestic Relations Law (Consol. Laws, c. 14) § 111, subd. 3, providing that consent to adoption of a minor by the parents is necessary, unless they were judicially deprived of the custody of the child on account of cruelty or neglect, it is not necessary that the parents should first be convicted of the offense; but the Children's Court may determine whether the children are neglected, and, if it so determines, parents are "judicially deprived of custody," so that in adoption proceedings it is unnecessary to give them notice.

[Ed. Note.—For other cases, see Adoption, Cent. Dig. §§ 18-21; Dec. Dig. ⬥⟲12.]

3. HABEAS CORPUS ⬥⟲117—CONCLUSIVENESS—MATTERS CONCLUDED.

Where a mother sued out a writ of habeas corpus to test a commitment of her children on a finding of neglect of them by her, and the writ was dismissed, from which determination she failed to appeal, the dismissal was res judicata on the propriety of the commitment.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 119, 120; Dec. Dig. ⬥⟲117.]

Appeal from Surrogate's Court, Richmond County.

Proceeding in the matter of the adoption of Anna, Helen, and James Antonopulos by James Antonopulos, in which Rose Antonopulos moved to vacate the order of adoption. From an order denying her motion, she appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, STAPLETON, MILLS, and PUTNAM, JJ.

Franklin Bien, of New York City, for appellant.

Samuel H. Evins, of New York City (Toney A. Hardy, of New York City, on the brief), for respondent.

PUTNAM, J. [1] The mother, who, in neglect of the parental duty to nurture her children, allows them to be improperly exposed or neglected, is subject to arrest, and to be brought before a proper court or magistrate, who may commit the neglected children to an institution. Penal Law, § 486, subd. 2. In such case the Legislature, subordinating a parent's custody to the infant's welfare, considers the "child in need of the care and protection of the state." Laws 1910, c. 659, § 39. The Children's Court in Kings County had jurisdiction of such a proceeding. Penal Law, § 486; Laws of 1910, c. 659, § 39.

In February, 1915, an agent of the Society for the Prevention of Cruelty to Children filed in this Children's Court an information, alleging that these three children above named (two aged 5, and one of 3) were found without proper guardianship, neglected by parents and guardians, in violation of section 486 of the Penal Law; that the father was dead; charging dissolute conduct on the mother (this appellant), even that her intercourse with dissolute men had occurred in the children's presence; also that she had then left the children,

and had gone to Buffalo with a male person with whom she had a meretricious relationship.

After full hearings, in which appellant was represented by counsel, the charges were amply proven, whereupon, with testimony as to the children's religion, the learned justice on March 10, 1915, committed these children to the Greek American Institute of New York. Appellant attempted to test this disposition by a writ of habeas corpus, which, on March 26, 1915, Justice Clark, of the Supreme Court, at Special Term, dismissed, upon the return showing such commitment. From this determination appellant did not appeal. The uncle then took proceedings to adopt these children, but not on notice to appellant, who was referred to in his petition as having been deprived of custody of the children. It set forth the action by the Children's Court, annexing copy of Justice Wilkin's opinion, showing that the mother had been judicially deprived of their custody and they had been committed to the Greek American Institute of New York. The consents of others interested were attached. The order of adoption by the Surrogate was made on April 10, 1915. Appellant thereafter took the proceeding, which her appeal brings here, to set aside this order. After hearing, and upon filing an opinion, this was denied.

[2] Her appeal raises the single point that, because of omission of notice to her, the Surrogate's Court was without jurisdiction. Our statute makes it unnecessary to give notice to a parent who is "judicially deprived of the custody of the child on account of cruelty or neglect." Domestic Relations Law (Consol. Laws, c. 14) § 111, subd. 3, formerly Laws of 1873, c. 830, § 6. Here the grounds were more than mere neglect. When the dissolute mother was arrested in the Buffalo hotel, these children had been left in the hands of a rheumatic old woman too infirm to undress them, so that, when taken, they were found asleep in their clothes at 10 o'clock at night. Other conditions were shown calling for interference. A full investigation resulted in a commitment actually depriving appellant of her custody.

Appellant's counsel urges that "judicially deprived" requires that appellant should have been convicted of the offense mentioned. But this is to lose sight of the purpose of the Children's Court, which is not to convict, or punish, but to protect. Starting with the innovation of hearings of juvenile cases in a separate room, a new court followed, wherein it was often found that the first step was to take the child from the corrupting influence of bad surroundings. Justification for such a power to take the child away from depraved parents was taken from the old chancery jurisdiction, exercised as parens patriæ—in former times invoked chiefly for children with property, or in connection with matrimonial decrees. On behalf of infancy, suffering from poverty, vice, and neglect, this ancient chancery doctrine was now laid hold of and turned to wider service. The interests of the child, not the punishment of crimes, are the subjects of the jurisdiction of Children's Courts. Commonwealth v. Fisher, 213 Pa. 48, 62 Atl. 198, 5 Ann. Cas. 92. When such investigation, conducted with care, as the present record shows, results in taking away the children from the control and influence of the delinquent parent and committing them to an institution, she has been "judicially deprived

of custody" within our adoption statute. Otherwise, the permanent effect of Children's Courts, now carrying on beneficent work in cities of over 30 American states, would be lost or imperiled.

[3] Furthermore, the dismissal of the writ of habeas corpus, sued out by appellant, was res judicata. Mercein v. People, 25 Wend. 64, 35 Am. Dec. 653. Hence, on this appeal, minute criticisms of abbreviations in the information and in the form of the commitment are unavailing.

The order of the Surrogate's Court of Richmond County should therefore be affirmed, with costs. All concur.