ROSE GOSHKARIAN'S APPEAL FROM PROBATE (ROSE GOSHKARIAN *vs.* FAIRFIELD COUNTY TEMPORARY HOME).

Third Judicial District, Bridgeport, October Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued November 5th, 1929—decided January 6th, 1930.

*John Cuneo,* with whom, on the brief, was *William F. Tammany,* for the appellants (defendants).

*Edward J. Quinlan,* for the appellee (plaintiff).

BANKS, J. The parents of Florence Asderian were divorced on January 27th, 1922, when she was six years old, and her custody was awarded to her mother and later, by a modification of the decree, to her father, with whom she lived until January 23d, 1924. She was then neglected and uncared for and, with the knowledge of her father—who at that time had her in his sole care and custody, but without notice to her mother—she was committed by the City Court of Bridgeport to the Fairfield County Home for Dependent and Neglected Children. Her mother, the appellant, had married Joseph Goshkarian, and was living in New York City. She learned that Florence had been committed to the County Home and visited her there, but made no attempt to obtain her custody and control, and declined to do so while Florence was at the home. No appeal from the order of commitment was ever taken by Florence, or by her father or mother. On May 16th, 1925, she was placed, by the management of the home, with Louis and Rose Kozma of Westport, and has lived with them ever since. Her father, Asder Asderian, died on April 24th, 1926. Since his death no further steps have been taken to remove her mother as sole surviving natural guardian. On January 19th, 1927, the board of management of the County Home entered into an agreement with Louis and Rose Kozma for the adoption of Florence, who was then eleven years old, which was submitted to

the Court of Probate for the district of Norwalk for its approval, and was approved by the court. No notice of the proceeding in the Court of Probate was given to the mother, Rose Goshkarian, who was then living in New York City, but she learned of it more than a month later and took an appeal to the Superior Court. That court held that the board of management of the county home had no authority to give Florence in adoption without either the removal of Rose Goshkarian as her guardian, or her consent to the adoption, and set aside the decree of the Court of Probate.

The adoption of a minor child, and the giving of it in adoption to persons other than its natural parents, is a procedure, and creates a status, unknown to the common law. Being of purely statutory origin, a legal adoption results if the statutory procedure is followed, but fails if any essential requirement of the statute is not complied with. Our controlling statute, § 4878 of the General Statutes, is printed in the footnote.

It is not claimed that the board of management of the county home, in giving the child Florence in adoption, failed to comply with any of the requirements of the statute. The trial court held, notwithstanding,

§ 4878. The guardian of any child under the age of fourteen years with the consent of the selectmen of the town where such child resides; the parents of any such child; the selectmen of any town having in charge any foundling child; the parents or guardian of any minor child more than fourteen years of age with his written consent; the superintendent of the Soldiers' Orphan Home with the consent of the executive committee of such home, or the board of managers of any orphan asylum chartered by this State, by its secretary, and with the written consent of the parents, if any, of any minor inmate of such home or orphan asylum, and of such minor if more than fourteen years of age; or the board of management of any temporary home for dependent and neglected children having the custody of any minor duly committed thereto, by its chairman or secretary duly authorized, with the consent of any such minor more than fourteen years of age; may by written agreement give in adoption such minor child to any person, except as here-

that the statute conferred no authority upon the board of management to take such action, without the consent of the mother, Rose Goshkarian, until she had been formally removed as natural guardian pursuant to General Statutes, § 4861. Primarily, the parents are entitled to the custody and control of their minor children, and at common law this right inhered in the father to the exclusion of the mother. Under § 4861, first enacted in 1901, the rights of both parents are made equal, and upon the death of either the surviving parent becomes sole guardian. This statute adds nothing to the rights of the surviving parent. At common law the mother of a child, upon the decease of its father, became its natural guardian. *Fields* v. *Law*, 2 Root, 320. Section 4861 also provides for the removal as guardian of one or both of the parents upon a finding by the Court of Probate having jurisdiction that either or both are unfit persons to have charge of such child, or have abandoned it, or neglected to make suitable provision for its support or education. Long prior to 1901, when this statute was first enacted, the legislature had provided for the commitment to temporary homes of children who were neglected, dependent, or otherwise in need of care by the State. This legislation was first enacted in 1883. Public Acts of 1883, Chap. 126. In Chapter 328 of the Public Acts of 1895 it was enacted that the board of management of a temporary home "shall have full guardianship and con-

inafter provided, who may exhibit such agreement to the Court of Probate, in case the minor is an inmate of the Soldiers' Orphan Home, such orphan asylum, or any temporary home for dependent and neglected children, in the district which such orphan home, asylum or temporary home is located, and in all other cases to the Court of Probate in the district where either the natural parent or guardian, or the adopting parent resides, for approval, and such court shall have jurisdiction to approve of such agreement, and shall thereupon cause public notice to be given of the hearing hereon.

trol of each child committed to a temporary home for such county until such child shall have reached the age of eighteen years, or such guardianship and control shall have been legally transferred, or another guardian appointed by the Probate Court with the consent of said board"; also that "said board may give any such child, being an orphan or having been in charge of the county home for more than one year, in adoption in the same manner as any other legal guardian might do." The first clause above quoted is now a part of § 1769 of the General Statutes, and the latter clause, with slight changes, was incorporated by the revisers in § 233 of the Revision of 1902, the adoption statute, which is now § 4878 printed in the footnote. This legislation clearly entrusts the care and custody of the children affected by it to the board of management of the county home to which they have been committed and constitutes such board their legal guardian to the exclusion, necessarily, of any custody or control on the part of their parents, if any. The history of the legislation also explains the absence in § 4878 of any provision for notice to, or consent by, the parents or guardian of any child given in adoption by the board of management of a county home, since the board itself has been given full guardianship and control of the child. We cannot say that the Act of 1901 (now General Statutes, § 4861), which neither amended nor repealed any of the legislation regarding the care and custody of children committed to a county home, was intended to provide an exclusive method for taking from parents the guardianship and control of their children so long as they are inmates thereof. It would seem clear that its purpose was to provide a procedure for their removal in cases, which might not infrequently arise, where the conditions were not such as would justify or make expedient the

commitment of the child to the county home under the previously enacted legislation.

It is found that the mother received no notice of the commitment of her daughter to the county home. The statute (General Statutes, § 1782, as amended by Public Acts of 1923, Chap. 184) regulating the procedure upon such commitments, does not require notice to the parent or parents of the child, and the validity of the statute is not questioned. She did know of the commitment, and visited her daughter at the county home, but made no attempt to obtain her custody and control, and in fact declined to do so. She could at any time have made application for the revocation of the order of commitment and the termination of the guardianship of the county home. General Statutes, § 1773.

It is suggested that the natural rights of a mother to the care, custody and nurture of her daughter are invaded by permitting the daughter to be given in adoption to strangers without the mother's consent. It is perhaps a sufficient answer to this suggestion to say that the statute, whose validity has not been questioned, authorizes such procedure. But apart from this, it must be borne in mind that parents have no right of property in their minor children of which they cannot be deprived without their consent. Their rights are not absolute rights; they may be forfeited by their own conduct. The relation of parent and child is a status not a contract, and that status may be altered or abrogated by the State as *parens patriœ* in the interests of society. The welfare of the child is paramount to all other considerations, and the right of the parent to its custody and control must yield to the State when, because of the neglect of its natural guardians, the State assumes its guardianship and protection. *Whalen* v. *Olmstead,* 61 Conn. 263, 267,

23 Atl. 964; *Woodward's Appeal,* 81 Conn. 152, 166, 70 Atl. 453; *Purinton* v. *Jamrock,* 195 Mass. 187, 80 N. E. 802; 1 Schouler on Domestic Relations (6th Ed.) § 720. When the custody of a child has been taken from its parents because it is neglected and uncared for, their consent to its adoption is not required, since they have already been fully divested of its custody and control. *Purinton* v. *Jamrock, supra; Fischer* v. *Meader,* 95 N. J. L. 59, 111 Atl. 503; *In re Antonopulos,* 157 N. Y. Supp. 587; *Egoff* v. *Madison County,* 170 Ind. 238, 84 N. E. 151; 24 A. L. R. 427, note. In *Lewis* v. *Klingberg,* 100 Conn. 201, 123 Atl. 4, we held that a Court of Probate had no jurisdiction to appoint a guardian for a child until its mother, who was its sole guardian, had been removed. In that case there had been no action by any authority affecting the status of the mother as the natural guardian of the child. Here, as we have seen, by virtue of the commitment of Florence to the county home, the management of that institution was vested with her full guardianship and control to the exclusion of her parents.

There is error, the judgment is reversed, and the cause remanded to the Superior Court with direction to enter its judgment dismissing the appeal from the Court of Probate.

In this opinion MALTBIE and HINMAN, Js., concurred.

WHEELER, C. J. (dissenting). The facts stated in the majority opinion should be supplemented by these additional facts which appear in the finding:

The decree of divorce awarding Florence to the appellee-mother was modified by awarding her custody to her father because the mother was obliged to seek domestic employment. Before the death of

the father on April 24th, 1926, the mother, unknown to her second husband, Mr. Goshkarian, endeavored, unsuccessfully, to locate her daughter. After his death her husband joined with her in an effort to locate Florence. They hired attorneys and went to the Bureau of Child Welfare, but could get no information of Florence and did not learn of her whereabouts until they later learned of the adoption. After the death of Mr. Asderian no steps were ever taken to remove the plaintiff as the sole surviving guardian of Florence. No notice was given the plaintiff at the time of the commitment of Florence to the home and she at no time understood or believed that Florence was beyond her legal control, or the power of voluntarily returning to her. Mr. Goshkarian is thirty-six years old, his wife, the mother of Florence, thirty-four. She is a healthy woman. He is possessed of considerable property and his home is a suitable one for Florence and he and his wife are financially able to care for and support her; they are church attendants, send their two children, one of whom is the brother of Florence, to Sunday school, and are able and desirous of providing for her physical welfare, and her secular and religious education and training. Mr. and Mrs. Kozma, to whom Florence has been given in adoption, are Hungarians, he fifty-seven, she fifty-three. They are financially able to care for Florence and to support and educate her and are giving her secular education, including training in music, and are also looking after her religious welfare, and she regularly attends church and sunday school. Mr. and Mrs. Kozma have no child other than Florence and she is desirous of remaining with them and does not wish to return to her mother. The home of Mr. and Mrs. Kozma is a suitable one in which to bring up a child, but not so well

suited as that of Mr. and Mrs. Goshkarian, who are Armenians, owing to the difference in race and ages.

The plaintiff first learned of the adoption more than a month after the decree of adoption and then took this appeal. To the answer of the defendant on the appeal the plaintiff demurred; the court sustained the demurrer. An amended answer was filed and upon the trial the court, by another judge, held that the determinative question at issue was that raised by the demurrer, and set aside the decree of the Court of Probate. The basis of these rulings was that the management of the home had no authority to give Florence in adoption without either the removal of the plaintiff as her guardian, or having her consent to the adoption.

The procedure for the adoption of a minor child, and the giving of it to persons other than its natural parents, is of statutory origin and unknown to the common law. The mother-appellee does not claim that the procedure for the adoption of Florence did not comply with the statutory requirements, except in two particulars. Her claim is that the management of the home was without authority to take the action they did unless they had either procured her consent or her removal as natural guardian, pursuant to General Statutes, § 4861.

The rights of both parents under § 4861 are made equal; the statute further provides that upon the death of either, the surviving parent becomes the sole guardian of their minor child. In these particulars the statute did not either create a new right in the surviving parent or add to those existing under our common law.

Section 4861 of the General Statutes as amended by § 1 of Chapter 130 of the Public Acts of 1911 and by Chapter 97 of the Public Acts of 1913 and Chapter 21

of the Public Acts of 1917, also provides a procedure for the removal of either or both parents as guardian of a minor child upon the application of the selectmen or a relative, upon finding that either or both are unfit to have charge of the child, or have abandoned or neglected to make suitable provision for its support or education. It provides as a jurisdictional requisite for such decree the giving of notice to the parent or parents, by registered mail or otherwise, unless the parent shall waive this or the court shall find the child has no parent in the United States. If the address of the parent is unknown, notice may be given by a specified publication. Upon the death of the father the mother became the natural guardian. In this case the mother has not abandoned her right to so act as the natural guardian of Florence, nor has she been removed, nor has an application been made for her removal under this statute. We have recognized the principle underlying this statute in *Lewis* v. *Klingberg,* 100 Conn. 201, 123 Atl. 4, and *Dunham* v. *Dunham,* 97 Conn. 440, 117 Atl. 504. If § 4861 as amended is applicable to the facts of this case, as we think it is, the judgment of the trial court setting aside the order of the Court of Probate approving the adoption agreement was correct. Section 4861 constituted this mother the sole guardian of the person of this minor child and provided by its terms the exclusive method for securing her removal. If the court finds notice has been given or a waiver filed, and that one or both parents are unfit persons to have charge of the child, or have abandoned or neglected to make suitable provision for the support or education of the child, it may remove the parents or parent as guardian. The statute plainly provides that if only one parent shall be removed the other parent shall thereupon become sole guardian of the person of such minor. If both parents,

or the sole living parent, be removed, the court will appoint a guardian of the person of the minor. By its express terms there is no way to deprive the surviving parent of the guardianship of the person of the minor save by the removal of the guardian by the designated court upon its finding of the statutory jurisdictional facts.

Chapter 109 of the Public Acts of 1870 is the origin of this provision of § 4861. It provides that the appointment of the guardian of the person of a minor shall not be lawful unless notice shall be given to the parents and that any person appointed guardian without notice to the mother shall, on the application of the mother, be removed. The statute was amended by Chapter 10 of the Public Acts of 1874, which required personal notice to the parents, but provided that if the parent resided outside the State notice may be given as the court sees fit to order. We have construed the provision regarding notice strictly in *Denslow* v. *Gunn, Judge,* 67 Conn. 361, 367, 35 Atl. 264.

The contention of the appellant is that this statute in part is superseded by § 4878 as amended, thus repealing its provision in a case where the board of management of any temporary home for dependent and neglected children has, by written agreement of adoption, given in adoption a minor in its custody under fourteen years of age and the Court of Probate has approved the agreement after hearing had and upon public notice given. It is our duty to reconcile these statutes, antagonistic as they seem to be, if the literal language of § 4878 bears the construction accorded them by the appellant.

Turning to the adoption statute, we find that Chapter 85 of the Public Acts of 1864 provided that when the parent or guardian of any child under fourteen,

with the consent of the selectmen, and the selectmen of any town having in charge any foundling child more than one year of age shall, by written agreement, give in adoption such child to any person, he shall exhibit it to the Court of Probate who shall issue an order of notice to interested persons to show cause why the agreement should not be approved and shall cause the same to be published for two weeks and posted for six days and if upon the hearing the judge shall be of opinion the agreement will be for the benefit of the child he shall approve it.

In Chapter 84 of the Public Acts of 1868 a like power was vested in the superintendent of the Soldiers' Orphans Home, with the consent of the executive committee, and the written consent of the parent or parents of the minor, to give in adoption any child an inmate of the home under the procedure stated in the Revision of 1866, which followed literally the provisions of the Act of 1864.

The Revision of 1875, page 189, Chapter 4, § 1, provided that the guardian, with the consent of the selectmen, or the parents of the child, or the selectmen having in charge any foundling child more than one year of age, or the superintendent of the Soldiers' Orphan Home, might give in adoption such child with the approval of the Court of Probate by following the procedure of the Act of 1864. The changes made were in consolidating the Acts of 1864 as in the Revision of 1866, with the Act of 1868, and removing the requirement of the consent of the selectmen if the parent enter into this agreement. Chapter 29 of the Public Acts of 1880, added to the number of those who might enter into such agreement and avail themselves of the procedure to secure such legal adoption of a child, the Hartford Orphan Asylum, subject to the requirement provided for the Soldiers' Orphan Home—the procur-

ing of the written consent of the parent, if any. The revision of the probate laws in Chapter 110 of the Public Acts of 1885, in place of the Hartford Orphan Asylum, substituted "any orphan asylum," and changed the notice theretofore required, to the causing by the court of "public notice" of the hearing to be given, otherwise the statute remained the same. Chapter 126 of the Public Acts of 1883, was an Act to establish temporary homes in each county of the State for dependent and neglected children. Chapter 328 of the Public Acts of 1895 provided that the board of management of the temporary homes in each county for dependent and neglected children shall have full guardianship and control of minors committed to the home, and further provided that the board "may give any such child, being an orphan or having been in charge of the county home for more than one year, in adoption in the same manner as any other legal guardian might do, and may at its discretion apply to the proper Court of Probate for the appointment of a guardian of any such child." By legal guardian is meant the guardian appointed by the court. Such a guardian may only enter into an agreement for adoption "with the consent of the selectmen of the town where the child resides." This provision, if still in force, precludes the board of management from entering into this adoption agreement since it had not secured the consent of the selectmen and was neither the guardian of the person nor the legal guardian of the child. The provision that the board may apply for the appointment of a guardian by the Court of Probate unmistakably emphasizes the fact that the statute did not intend or contemplate that the committing of the child to the custody of this board was the appointment of the board as the guardian of the child. In the Revision of 1902, § 233, the provision

vesting the power as to adoption, which first appeared in the Act of 1895, is in this form, "or the board of management of any temporary home for dependent and neglected children having the custody of any minor duly committed thereto, with the consent of any minor inmate more than fourteen years of age, by its chairman or secretary duly authorized by said board." The only notice required was the public notice provided for in the revision of probate laws in 1885.

The revisers are presumed not to have intended to change the law. *Ross* v. *Crofutt,* 84 Conn. 370, 376, 80 Atl. 90. This section of the Revision of 1902 was amended in Chapter 59 of the Public Acts of 1905, by striking out the last six words of the clause, "or the selectmen of any town having in charge any foundling child more than one year of age." Aside from this amendment and the change in the form of the Revision of 1902, which appears in § 4878 of the Revision of 1918, there has been no other change in the statute of origin of 1895. It thus appears that a child under fourteen may be given in adoption upon the approval by the Court of Probate of a written agreement made with any person by (1) the guardian of the child with the consent of the selectmen, (2) the parents of the child, (3) the selectmen having in charge any foundling, (4) the superintendent of the Soldiers' Orphan Home, with the consent of its executive committee, or the board of managers of any orphan asylum chartered by this State, with the written consent of the parents of the child, and (5) the board of management of any temporary home for dependent and neglected children having the custody of the child duly committed thereto. The right to make such agreement is thus given to the guardian of the child with the consent of the selectmen. The appointment

of the guardian has thus been made after the due hearing provided by the statute and the specific notice given required by the statute. The right is given absolutely to the parents. The plaintiff-mother of this child is the sole guardian of the person of the child by virtue of her relationship to the child. She has never been removed. If the board of management may deprive her of her right to act as such guardian, the same statute gives this right in absolute terms to this mother and takes it away not by express terms but by mere implication, resulting in a statutory construction which the legislature cannot have reasonably intended.

This right is also given to the selectmen when there are no parents and to the executives of the Soldiers' Orphan Home, a State institution, and any orphan asylum chartered by the State, but only with the consent of the parents. None of these classes do violence to the right of the parent as natural guardian to the child.

The fifth of these classes does violate this right, if its construction gives to the board of management of the temporary home in any county the right by written agreement to give in adoption a child to any person with the approval of the proper court. Such a construction is contrary to the fundamental principle which governed this statutory right from 1864 down to the Revision of 1902, and that was the consent of the parent, if any, to the agreement of adoption. There is authority (*Purinton* v. *Jamrock*, 195 Mass. 187, 80 N. E. 802) for the position that statutes of this character are constitutional which do not provide for the consent of the parents and that unless required by statute such consent is not necessary, but such consent is as a rule required in the statutes, so that our own statutes had always been in accord with

the customary statutory requirement in this respect from 1864 down to the Revision of 1902.

The construction made by my associates, as we have shown, brings this provision of § 4878 in conflict with § 4861 as amended, and other sections of the Chapter of the statutes on guardians and minors. Upon the death of either father or mother, the survivor becomes the sole guardian of the person of the child and remains such until removed. The construction of this provision of § 4878 which the majority opinion adopts takes away the mother's right as sole guardian of the person of her child and brings § 4878 in direct conflict with § 4861. Certain provisions of General Statutes, Chapter 90, homes for dependent and neglected children, squarely conflict with the theory of the provision of § 4878 that the board of managers of temporary homes are constituted guardians of the persons of minors committed to the home. For example, § 1793 provides that the board "may commit such children to any suitable persons or institutions consenting thereto, designated by the parents or guardians of such children." It also gives the parent the right to petition the board for the transfer of the child from the home to the keeping of a suitable person or institution and gives the board power to release and discharge the child from the home and deliver it to its parent or guardian. Nothing could be clearer than the recognition in these provisions of the parent's continuing right as guardian of the person of her child.

If a child committed to the Connecticut School for Boys, or to Long Lane Farm, is transferred from these institutions to a county home (§ 1786), the transfer does not divest the child of the guardianship of these institutions. This is a statutory interpretation of the words "guardianship and control" which are used in the statutes in respect to the committal of a child to a

temporary home. A reform or industrial school to which a child is committed does not become its guardian and the committal automatically remove the parent as natural guardian of the person of the child, no more does a committal to a temporary home.

Again, while the children are in the temporary home, § 1794 grants to clergymen of all religious denominations the privilege to impart religious instruction to the children in the home, and to the parents of a child a like privilege. No legitimate reason can be assigned for this parental privilege other than that the State recognized the continuity of the relationship of the parent as the guardian of the person of the child. Section 1795 provides that parents of sufficient pecuniary ability must contribute to the support of their children committed to temporary homes and upon their failure subjects them to criminal prosecution under § 6416. Is it possible that the State would take away the right of the parent as guardian of the person of the child and yet subject the parent to the penalty of imprisonment for not contributing to the support of the child? All of these sections were a part of the Revision of 1902, and were adopted at the time § 4878 was adopted. They make it doubly clear that the adoption provision of § 4878 we are considering cannot be taken in its literal terms.

While notice to a parent is held by competent authority unnecessary to the validity of a statute of adoption, it is of the utmost importance in construing this provision that it be remembered that the adoption statute requires merely a public notice to be given, while the statutes relating to the appointment and removal of a guardian require a specified notice, and with the obvious purpose of giving the parent notice of the proceeding. Is it a reasonable construction of the provision in question to hold that the board has

the power of entering into this agreement, which, if approved by the court, divests the plaintiff-mother as guardian of the person of her child without notice to the mother other than the formal public notice, which in this instance was no notice?

The committment to the charge of the management of the temporary home can only be until the child reaches eighteen, yet this agreement of adoption lasts during the life of the child, and forever breaks the tie of this parent as the guardian of the person of her child. We cannot believe the legislature intended such a result, or intended to enact such antagonistic legislation as these sections to which we have referred involve, if the language of the statutory provision upon which the majority opinion relies is construed by its literal language.

We think § 4878 must be construed in the light of Chapter 328 of the Public Acts of 1895, and of the other sections of the chapter on adoption and of the chapter on guardians and minors. So construed, the conclusion follows that the board of management of this home had no authority to enter into this agreement of adoption and that no one but this mother had that right under our statute at that time and that the board were without such power until the plaintiff-mother had been removed or had waived her right as guardian.

The construction accorded to § 4878 by the majority opinion means that every child committed to a temporary home may be given in adoption forever by the managers of the home with the approval of the Court of Probate, although no notice is given of this proceeding to the parent who is the natural guardian of the child and has never been removed or waived her right as such guardian.

In this case the rights of the mother as natural guardian are taken away by an *ex parte* decree of the Court of Probate in a case where the mother can well care for her child and where she will be brought up in companionship with her own brother, under proper influences of home, education and religion. And this untoward situation is brought about by the construction which my associates give to the statute in the Revision of 1902; undoubtedly through inadvertence and to shorten the terms of Chapter 328 of the Public Acts of 1895, the revisers omitted some of the provisions of the statute of origin upon which this section of the Revision was based, while the revisers of 1918 quite naturally followed the Revision of 1902.

Section 4878 should be amended so that the managers of temporary homes, who are not the legal guardians of a child committed to their custody, would have no greater right to give a child in adoption than the legal guardian of the child, or the superintendent of the Soldiers' Orphan Home, with the consent of the executive committee, or the board of managers of any orphan asylum chartered by the State. This mother, who loses her child, is upon this record a worthy woman and not at fault for the neglect of her child. The law, as now construed, gives her child in adoption to strangers at a time when she and her present husband are ready and able to give the child a good home and proper care. I am unwilling to believe that the legislature intended to change the statute to effect this end when they adopted the Revision of 1902, or that of 1918.

In this opinion HAINES, J., concurred.