QUEEN E. MITCHELL *v.* MARTHA C. DAVIS ET AL.

SUPERIOR COURT    NEW HAVEN COUNTY    FILE NO. 27824
AT WATERBURY

Memorandum filed November 14, 1962

*Joseph Protter,* of Waterbury, for the plaintiff.

*Leonard M. Caine,* of Naugatuck, for the defendants.

MEYERS, J. The custody of Raymond Edwin Chatfield, born out of wedlock in Waterbury on May 27, 1958, is placed in issue by this habeas corpus proceeding.

The absent William H. Wright, who at the time of the institution of these proceedings was described in paragraph one of the application for the writ as the "putative father," now has acknowledged his paternity of the child in accordance with General Statutes § 52-442a. This was the second child born out of wedlock to the mother, the defendant Martha Chatfield Davis, hereinafter called the defendant, and each had a different father. Custody of Raymond is sought by the plaintiff, the mother of William H. Wright, and this is opposed by the mother of the child. Considerable evidence was offered by both parties, and in certain details it seemed to extend beyond the actual issues. The propriety thereof is not questioned in a matter such as this, where the removal of a child from the custody of his parent is contemplated. "No other occasion can call more loudly for judicial vigilance in reaching for the exact truth, and in putting aside with an unsparing hand the mere technicalities of procedure." *Corrie* v. *Corrie,* 42 Mich. 509, 510.

During November, 1960, the defendant actually gave Raymond, her then two-year-old child, into the sole and exclusive maintenance and care of the plaintiff, with the expressed understanding that the plaintiff, the child's grandmother, was thenceforth to continue, uninterruptedly, such care at her own effort and expense. There is evidence that the plaintiff, who is now forty years old, assumed this undertaking seriously and performed it creditably. The defendant is now married and presently lives with her husband and their four children. From January 16, 1957, to October 30, 1962, she has received $7824.11 in welfare aid. Her husband had left his

family for considerable periods of time, and though they are living together now, he has not been employed for some time and is not now employed. The income of the Davis family at the time of trial continued to be derived from the temporary aid to dependent children program of the welfare department of Connecticut. It is in evidence that for a period of about four months the defendant collected A.D.C. funds for the maintenance of Raymond while he was in the care of his grandmother, the plaintiff.

The defendant made no effort to see the boy or telephone the plaintiff concerning his welfare from Christmas, 1960, to May, 1961, though both parent and child continued to live in Waterbury. Subsequently, there were other considerable lapses of time in this respect. Intermittently, while the plaintiff had the child and as she required it, the child's mother would act as baby sitter for him and would be paid by the plaintiff therefor. The defendant did not once suggest or ask for the return of the child to her in the almost two years which the plaintiff had him before the retaking of the boy by the defendant, which act precipitated this proceeding. The several separations of the defendant and her husband, and the nature of and source from which is derived the limited sustenance for the family which includes these parents and four other children, in itself would indicate some domestic intranquillity, actual want and an otherwise trying existence. The court did not observe, nor was there evidence presented, that the defendant or her husband, who also appeared as a witness, suffered from any type of physical infirmity. Their continued unemployment presented no apparent concern to either of them.

There is some evidence that the codefendant Ann Walton, who is the sister of the defendant, agitated for the removal of the child from the maintenance

and care of the plaintiff even after the plaintiff satisfactorily cared for the child and exercised control and custody of him from the tender age of two to his presently imminent school age. Some evidence discloses that Ann Walton now desires to have this child in her otherwise childless home. It is clear that the defendant, at the time she offered and turned over her son Raymond to the plaintiff in November, 1960, then told the plaintiff that she never wanted the boy. The fact that the mother has apparently changed her mind and now attempts to withdraw her promise does not in itself relieve her of her agreement. See *Bailey* v. *Mars,* 138 Conn. 593, 600. The plaintiff has evidenced great love, affection and ability to care for Raymond, her grandchild by blood. The boy appeared in the courtroom and the true mutuality of such love was clearly demonstrated. The plaintiff is quite willing and able to give up any domestic employment she may have if she is required so to do in order to care for the boy. Her husband has been regularly employed in one position for eleven years, is currently earning a gross average in excess of $130 per week, and is desirous, along with his wife, of keeping, caring for and having custody of the child. This couple have no other children living with them.

Legitimacy or illegitimacy of offspring does not alter the problem of who is entitled to custody. Our state has not followed the common-law rule that a bastard is nullius filius. *Pelak* v. *Karpa,* 146 Conn. 370, 372; note, 65 L.R.A. 689. Although a mother does have a superior legal right to the custody of her illegitimate offspring, that legal right is not absolute in proceedings such as this. *Goshkarian's Appeal,* 110 Conn. 463, 468. Consideration, as in the instance of a legitimate child, must be given to the welfare of the child involved. Where, for instance, a mother abandons her child, this

would constitute such misconduct as would favor the placing of the custody of the child elsewhere. 7 Am. Jur. 670, Bastards § 65.

Our Supreme Court has repeatedly held that in any proceedings regarding the custody of a child the welfare of the child must be the controlling consideration. *Scott* v. *Furrow,* 141 Conn. 113, 120; *Bailey* v. *Mars,* supra; *Dunham* v. *Dunham,* 97 Conn. 440, 443. It has also been determined that this principle governs even at the expense of depriving a parent of custody. *Don* v. *Frankel,* 136 Conn. 411, 413; *Goshkarian's Appeal,* supra. In proceedings of this kind, no litigating party has any rights which can be allowed to militate seriously against the welfare of the child. "Neither parent has a right of property in their children of which they cannot be deprived without their consent." *Antedomenico* v. *Antedomenico,* 142 Conn. 558, 562. The paramount consideration is what the best interest of the child demands. *Krasnow* v. *Krasnow,* 140 Conn. 254, 260. Without exception, it is the protection of the pawn, and not the satisfaction of those engaged in a conflict for its custody, which controls. Here the innocent subject of contention is unable to reason or act for himself, and his welfare and fate is not to be lost sight of in this formal altercation for his possession. "Nature's provision of mutual affection commonly exists as the incentive to parental and filial duty and the bond of family union. It is the instinct of childhood to attach itself and cling to those who perform towards it the parental office; and they become endeared to it by ministering to its dependence. A parent, by transplanting his offspring into another family and surrendering all care of it for so long a time that its interests and affections all attach to the adopted home, may thereby seriously impair his right to have back its custody by judicial decree. In a contro-

versy over its possession, its welfare will be the paramount consideration in controlling the discretion of the court. The strict right of the parent will be passed by, if a judgment in observance of such right would substitute a worse for a better custodian." *Kelsey* v. *Green,* 69 Conn. 291, 299.

It is the conclusion of this court that the best interest of Raymond Edwin Chatfield requires that this situation be resolved with the custody of the child resting in the plaintiff, to whom he had been returned, just before the trial was commenced, pending the outcome of this litigation.

Judgment may enter accordingly.