[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage brought by the plaintiff husband against the defendant wife. The parties were married on October 26, 1980 in Bridgewater, New Jersey. After their honeymoon in Disney World and the Bahamas, they moved into the plaintiff's home at 3 Kingsbury Road in Norwalk where the plaintiff resided until October, 1994 and where the defendant and the parties' three minor children continue to reside. The three minor children are Shana Marie Telesco, born July 8, 1984, Melissa Dawn Telesco, born July 26, 1986, and Kyle James Telesco, born February 8, 1988, thus 12, 10 and 8 years of age at the present time.
The issue in this case is the question of custody of the children. Each of the parents seek custody of the children. The children are represented by Attorney Patricia Reath and there has been a Family Relations study by two counselors, an initial study and a more recent update.
Trial of this matter commenced on September 24 and was continued on September 25, 26, 27, October 2, 7 and for two hours on October 8. In addition to the parties, there have been eight witnesses including the two family relations counselors, two school counselors and the two counselors presently being seen by each party.
The witnesses who know the children all agree on their descriptions of the children. Shana has been described by her father as "articulate, bright, conscientious, sweet, caring, very athletic, competitive", and an excellent student enrolled in the academically talented program. She plays the clarinet and violin, CT Page 7632 is in the seventh grade and has expressed a wish to live with her father.
Melissa has been described by her father as "a free spirit, very open with her feelings, bubbly, always smiling, very bright", and an excellent student also enrolled in the academically talented program. She also plays the violin. Melissa is in the fifth grade at Naramake School. He describes her as being very compassionate and occasionally moody but over this quickly. She, too, has expressed a wish to live with her father.
Kyle has been described by his father as "a person with a great disposition, always able to keep himself occupied, having a difficult time with the divorce, very compassionate, very expressive, very intelligent, also in the academically talented program, very artistic ability, good hand/eye coordination, good visual concept." He is in the third grade at Naramake School. He, too, expressed a desire to live with his Dad, although he changed this position after the pre-trial with the Special Masters. The plaintiff has testified that the defendant persuaded him to change his position after the pre-trial conference when she first learned of his expressed preference.
There has been trouble with this marriage since 1984. The defendant claims there has been physical violence in every year since 1984. She and her therapist have testified that she has been subjected to physical abuse, emotional abuse and economic abuse. Her therapist described her as a battered woman. The plaintiff, however, denies all of the defendant's allegations. While he admits there were many arguments and shouting and screaming between them, he states that he never ever laid a hand upon the defendant except once when he kicked her at the time of the incident involving the cereal on the floor in order to protect Melissa, and that he pushed her on another occasion.
The defendant has mentioned the physical and emotional abuse to the family relations counselors amd to the school counselors. She caused the plaintiff to be arrested on two occasions, the first time both were arrested upon breach of the peace charges which were nolled and the second time on charges of assault which were subsequently dismissed. The children stated to the Family Relations Counselor that they did not observe any incidence of their father physically abusing their mother, but seemed to feel that their mother had an active role in provoking discord with their father. CT Page 7633
As often happens in these cases regarding the relationship between the parties, the facts to be found involve the credibility of the parties. I find the testimony of the plaintiff to be more credible. I find that there has been no physical abuse by the plaintiff directed toward the defendant.
Certainly the defendant perceives that she has been wronged in some way. She despises the plaintiff. There has been a total lack of communication between the parties, although the plaintiff has tried repeatedly to communicate for the benefit of the children. The defendant's attitude has affected the plaintiff's visitation in that the smallest deviation from the court's order results in complaints to the children and complaints to the plaintiff. The defendant has been completely inflexible throughout these proceedings.
The court finds that instead of there being physical abuse by the plaintiff that there has been physical abuse directed at the plaintiff and the children by the defendant. With regard to the plaintiff, the court finds the defendant has hit him, has spit in his face, has stated the cruelest possible things to him, has hid his glasses, has hid the checkbook, has locked the plaintiff out of the house on at least two occasions, and has harassed the plaintiff at the children's school on Pride Day in 1995, to mention but a few. The children have been physically abused by the defendant digging her fingernails into their arms and grabbing Shana by the arms and shaking her so that her head shook back and forth (a form of punishment that can result in a severing of the spinal cord). There was also the incident with Melissa and the spilled cereal when the defendant pushed her head down to eat the cereal off the floor.
The court had the opportunity to observe the defendant's demeanor on the witness stand. She was very evasive in her answers to questions put to her on cross-examination. She was unable to answer questions directly and was generally most evasive. Her testimony was not credible.
Both parties, except for occasional periods of unemployment, worked throughout the marriage. The plaintiff is 41 years of age. He describes his health as excellent, although he is an albino. He has extremely poor vision and for many years as a youngster was unable to read. His mother had to read everything to him through the tenth grade. Thereafter he realized this could not CT Page 7634 continue and he struggled and studied until he could read on his own. He is legally blind without his glasses. In 1977 he received a B.S. degree in Civil Engineering from Renselear Polytechnic Institute in Troy, New York. In 1978, he received a Technical M.B.A. degree also from Renselear. After graduation, he took the two day engineering exam but was unable to finish it and did not pass. He has never passed the test because of his slow reading.
In 1977, the plaintiff met the defendant at Delaware University at a school dance. They dated in 1978 and 1979. The defendant later attended Mary Washington University and graduated with a B.S. degree in Biology in 1978.
In September, 1980, the defendant purchased the present family home at 3 Kingsbury Road in Norwalk. As previously noted, the parties married in October, 1980, in Bridgewater, New Jersey. After their honeymoon, they resided in the plaintiff's home at 3 Kingsbury Road. Subsequently, the plaintiff conveyed a one half interest in the property to the defendant so that the property now is owned jointly by each of the parties.
The purchase price of the property was $98,000. (See plaintiff's exhibit J.) The plaintiff put down $27,000 and borrowed the balance of the purchase price, $72,000, from his parents. The parties executed a promissory note and a promise not to mortgage or sell. (See plaintiff's exhibit K.) The note was subsequently reduced to $26,000 by forgiveness of debt executed by the plaintiff's parents. (See plaintiff's exhibit L.) This is still shown by both parties on their financial affidavits as a debt due to Lillian Telesco, the plaintiff's mother. The plaintiff's parents advanced additional monies to the parties during 1993 and 1994 as loans totaling $9,950. (See plaintiff's exhibit M.)
The plaintiff is employed in a business owned by his mother. This is an incorporated business, New England Glass Enclosures, Inc., located in New Milford, Connecticut. His gross pay in 1995 was $33,350, a net of $28,957; however, without deduction for medical insurance. (See plaintiff's exhibit O.) His financial affidavit reports a net weekly wage of $411.99 after a health insurance deduction of $57.03.
The defendant is 40 years of age and in excellent health. She is employed on a part time basis at Rite Aid Pharmacy and Bag and Baggage. She works for Rite Aid on Tuesdays, Wednesdays and CT Page 7635 Thursdays and at Bag and Baggage on Mondays, Tuesdays and alternate Saturdays and Sundays. The defendant's hours with Rite Aid and Bag and Baggage fit around the children's school schedule. She has, in the past, also sold Avon Products on a commission basis. Averaging for the last six or seven weeks (the net pay stubs available), her gross income was $319 per week and net income $243 per week. Because of her limited income, she also received food stamps amounting to $140 to $200 per month.
While the defendant has realized little income from Avon sales in the last few months, she has in the past sold Avon products as noted above. In 1993, she had a job interview for a District Manager position. While she never received an offer, she felt the interview was positive. The position of Assistant Manager pays a salary of $30,000 to $32,000 per year which she could receive in that position. There is no present offer.
Her prior full time employment included employment at Roche Clinical Laboratories in 1980 earning $6900, Beyersdorf in 1981 where she earned $9500, Beyersdorf in 1982 where she earned $13,000, Gifts and Things in 1983 when she earned $5000. After Sharon was born in 1984, she did not work outside the home but started her own business called Common Cents Coupon Company. In 1985, she also worked selling Avon products and she continued working on both projects in 1986 through 1992. In 1993 and 1994, she sold Avon products and in 1994 she also worked-for Connecticut Handbag and Luggage Company earning $6,523. (See plaintiff's exhibits A, B, C, D and E.)
With regard to the property of the parties, the principal asset is the home at 3 Kingsbury Road in Norwalk. As previously noted, this property was purchased in 1980 by the plaintiff with his down payment of $27,000. The defendant has not contributed any money in the acquisition of this property. The plaintiff values this property in his financial affidavit at $260,000. As previously noted, it is subject to an obligation to the plaintiff's mother of $26,000, a first mortgage for $68,400, broker's fees computed at 6% if sold of $15,000, and estimated closing costs of $1400. Also to be deducted if this property were to be sold should be the debt to Lillian Telesco for loans of $9,900. In addition, there is a $10,000 mortgage to Attorney Reath, as ordered by the court, to secure amounts owed to her by way of counsel fees as attorney for the minor children. This results in a net equity of $128,700 or $64,850 for each of the parties. CT Page 7636
The only other assets are a 1986 Chevrolet Caprice Estate Wagon valued at $2800 and a 1993 Saturn sedan valued at $7,100 with a loan balance of $5,460 with a net equity of $1640 and tangible personal property consisting of household furnishings and effects.
The plaintiff's financial affidavit includes a bank account of $20.86, a claim for money owed by the defendant of $490 and a claim that the defendant has savings bonds considered joint property in her possession with a value of $750. The defendant's financial affidavit values the tangible personal property at 3 Kingsbury Road at $2500 and includes a savings account at Norwalk Savings Society with a balance of $576.
The plaintiff owes $41,836 exclusive of attorney's fees to the date of trial of $32,700 and $5,000 owed to Attorney Reath. The defendant owes $15,085 exclusive of attorney's fees of $20,175 to date of trial and $5,000 owed to Attorney Reath.
While the court would prefer to permit the children to continue to reside in the family home until the youngest child reaches the age of eighteen, it is entirely unfair that the parties should be denied the equity in the home so to establish new households for each. There has been evidence that there are cooperative apartments and condominiums in nice areas of Norwalk within the price range of the parties' equity without moving the children from their present school districts.
The court finds that the defendant is very organized, that when the children were small she was very warm and cuddly with them, that she sees that the children are neat and well dressed, that she has helped the children with their homework in the past, that she attends parent teacher conferences and sees to the children's education. Certainly it is true that these children are as accomplished as they are because of both parties' participation and contribution in their upbringing. She is a fit parent to have custody of the children. As noted by the Family Relations counselors, each of the parties complement each other in their parenting skills.
The plaintiff has been close to the children. He is also a fit parent to have custody. While the children were very young, he assisted the defendant in raising them. The children have a warm and comfortable relationship with him and are more relaxed CT Page 7637 than with their mother. Perhaps the best summation of the children's relationships with the parties was stated by Ms. Champagne, the family relations counsel in her report on page 2 as follows:
 "Despite the intense conflict between the parents during this protracted legal dispute, the children are well-adjusted and doing nicely academically and socially. While the parenting styles are different and the father's manner with his son and daughters is a more open one, the mother is a highly organized parent and it is obvious the children have been the beneficiaries of their mother's finely orchestrated routines. These differences in parenting styles have created a nice balance for the children and makes it imperative for them to have consistent contact with both mother and father."
Ms. Champagne has recommended that the parties share joint legal custody and that physical residence of the three children remain with their mother. However, the relationship between the parties is so deteriorated that it would be impossible for the parties to work together in the children's best interests. SeeEmerick v. Emerick, 5 Conn. App. 649 (1985).
Section 46b-56 (b) of the General Statutes provides as follows:
 "In making or modifying any order with respect to custody or visitation, the court shall (1) be guided by the best interests of the child, giving consideration to the wishes of the child if the child is of sufficient age and capable of forming an intelligent preference. . . ."
As has been previously stated, Shana and Melissa have expressed their desire to live with their father. Kyle, also, expressed the same wish prior to the Special Master's pretrial but changed to say that he preferred to live with his mother.
With regard to the issue of custody and visitation, the following quotation from the case of Raymond v. Raymond,165 Conn. 735, 741 (1974) sets forth the rule of law upon the issue of custody and visitation. CT Page 7638
 Minor children are entitled to the love and companionship of both parents. For the good of the child, unless a parent is completely unfit, a decree should allow a parent deprived of custody to visit or communicate with the children under such restrictions as the circumstances warrant. 27B C.J.S. 478, Divorce, § 312. If circumstances have placed a financial burden on the parent in relation to visitation, the court may consider whether a reduction in support is in the best interests of the children, to allow the expenditure of funds saved from the reduced payments to be spent on securing visitation. A parent's privilege of visitation of children whose custody has been awarded to the other parent in a divorce action, however, is not an absolute right but one which is dependent on what is for the best interests of the children even though such visitation rights may be restricted or effectively terminated. Lewis v. Lewis, 338 Mich. 197, 201, 61 N.W.2d 66; Butler v. Butler, 83 N.H. 413, 416, 143 A. 471. Where custody and visitation rights have been affected, a court has the power and the duty to safeguard those rights while recognizing that such interests are subordinate to the welfare of the children. Neither parent's interest with regard to his or her children are a property right nor are they rights which cannot be terminated without his or her consent. Doe v. Doe, 163 Conn. 340, 343, 307 A.2d 166; Goshkarian's Appeal, 110 Conn. 463, 468, 148 A. 379. A contest relative to custody, such as visitation rights, is not one primarily to determine the rights of the respective parties but rather a determination of the best interests of the child or children. Antedomenico v. Antedomenico, 142 Conn. 558, 562, 115 A.2d 659, see Krasnow v. Krasnow, 140 Conn. 254, 260, 99 A.2d 104.
The court finds it is in the children's best interests to be in the custody of their father. It is in the children's best interests that they continue to live in the family home if the plaintiff is able financially to buy out the defendant's interest. If he is not able to do so, it is in their best interest, at least at the present time, to reside in the same school district in Norwalk. As has been noted by the Family Relations counselors, it is important that the children have access to both parents. Particularly at this time in Shana's and Melissa's lives, it is important that they have a close CT Page 7639 relationship with their mother. It is hoped that their mother also resides in the children's neighborhood so that they may visit frequently with her and so continue the close relationship that they have with her.
The defendant is well-educated. She has worked all during the marriage, mostly in retail sales. However, as previously noted, she did interview for one job as District Manager or Assistant District Manager with Avon Products. Her present jobs are part time jobs with hours working around the children's school schedule. Once the custody orders are fully in effect, she will be able to obtain a full time job, thus realizing greater net weekly income than reflected in her current financial affidavit. The plaintiff's net weekly wage is but $169 per week more than the defendant's upon which he will have to raise the three minor children. Considering the length of this marriage and the other factors of § 46b-82 of the General Statutes, it is clear that the defendant is entitled to alimony for a limited period. However, at the present time, the plaintiff has insufficient income to order more than $1.00 per year. In a period of ten years, the court finds that the defendant should be fully self-supporting, and the court shall order alimony terminable after ten (10) years.
For purposes of support, the defendant with $243 net weekly income is a low income obligor. Her basic obligation under the Child Support Guidelines is $73 per week. The court finds it would be inequitable and inappropriate to apply the Child Support Guidelines and, therefore, deviates from the guidelines in accordance with § 46b-215a-3 (b)(5)(B), provisions for alimony, and finds that $45 per week is a fair and equitable amount for the defendant to pay to the plaintiff by way of support.
The court is not unmindful of the language expressed by the Appellate Court in O'Neill v. O'Neill, 13 Conn. App. 300 at 311
(1988) cited with approval by the Supreme Court in Blake v.Blake, 207 Conn. 217 at 230 (1988) stated as follows:
 A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of CT Page 7640 marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities.
In determining the proper financial orders in this case, the court must consider the factors set forth in § 46b-81, § 46b-82, § 46b-84 and § 46b-215b of the General Statutes together with the provisions of § 46b-62 with regard to counsel fees. With respect to alimony, support and a division of the property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes § 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42
(1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530
(1980); Watson v. Watson, 221 Conn. 698, 710 (1992).
The court has considered all of the criteria of §§ 46b-81 and46b-82 and 46b-62 of the General Statutes and the Child Support Guidelines together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account", Scherr v. Scherr, 183 Conn. 366, 368
(1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982). Suffice to say that the court must consider all the statutory CT Page 7641 criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and that the court need not give equal weight to each factor. Kane v.Parry, 24 Conn. App. 307, 313-14 (1991).
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
4. The defendant is at fault for the breakdown of the marriage.
The court enters the following orders:
1. A decree of dissolution of marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. The plaintiff father shall have sole legal and physical custody of the three minor children.
3. The defendant mother shall have visitation on alternate weekends, from Friday evening through Monday morning when the children shall be returned by her to their respective schools.
4. The defendant mother may also have visitation with the children one evening per week, which may commence at the end of the children's school day. The defendant mother shall return the children to the father's residence by 8:00 p.m. that evening.
4. The defendant mother shall have the children on alternate legal holidays when the children are not attending school.
5. The defendant mother shall be entitled to have the children for the winter school recess in the even numbered years and the spring school recess in the odd numbered years. The parties shall divide equally the children's school vacation commencing with the last day of school before Christmas and ending on New Year's Day. The defendant mother shall have CT Page 7642 the children on alternate weeks during the summer school recess, returning the children two days before the commencement of school.
6. The defendant mother shall be entitled to have the children for Rosh Hashanah, Yom Kippur, Hanukkah, and the first night of Passover, in addition to other visitation.
7. The plaintiff father shall be entitled to have the children from 4:00 p.m. Christmas Eve through 9:00 p.m. on Christmas night and on Easter from 4:00 p.m. Easter Eve until 9:00 p.m. on Easter night, regardless of the weekend schedule. Thanksgiving and the day after, together with the following weekend, shall be alternated between the parties, the plaintiff to have the children with him in even numbered years, the defendant to have the children with her in odd numbered years commencing with the current year to be with the plaintiff, regardless of the weekend schedule.
8. The plaintiff father shall consult with the defendant mother regarding the children's health, education, and general welfare; however, he shall have the final decision making authority.
9. The plaintiff father may not remove the children's residence from their present school district in Norwalk, Connecticut without further order of the court.
10. The plaintiff father shall have exclusive possession of the former marital residence with the children, subject to the court's orders regarding the sale of the property. The mother shall have a reasonable time, not to exceed 60 days from the date of the court's decision, to make arrangements to obtain housing, during which time the minor children shall remain in the marital residence. During the time the defendant mother resides in the marital residence, the plaintiff father shall have the children every weekend from Friday evening at 5:00 p.m. until Monday morning, when he shall return them to school. He shall also have dinner with the children from 5:00 p.m. Wednesday evening until 8:00 p.m.
11. The plaintiff father shall maintain health insurance for the children. If the defendant mother obtains medical benefits for the children through her subsequent employment at a lower cost, she shall maintain coverage for the children and the CT Page 7643 plaintiff father shall reimburse her for the cost thereof. The parties shall share equally the unreimbursed medical and dental expenses of the children.
12. The defendant shall have such additional days and times of visitation as the plaintiff may make available to her in the children's or any one of their best interests.
13. There shall be no ritualistic indoctrination of any of the children into a religion until the child is over 18 years of age and able to choose for herself or himself.
14. The parties shall have free and open communication with the children when they are with the other party. Each party shall keep the other party advised as to the address and phone number of the other party at all times.
15. Neither party shall make any derogatory remarks about the other party in the presence of the children.
16. Neither party shall impose any restraint upon the person or liberty of the other party and each party shall refrain from threatening or harassing the other party. The parties, while in the presence of each other, shall conduct themselves as reasonable and responsible individuals. There shall be no swearing, no foul language and no name calling.
17. The present order restraining the plaintiff from entering the residence at 3 Kingsbury Road in Norwalk shall continue in effect until the defendant vacates the premises in accordance with the provisions of paragraph 18 as hereinafter set forth.
18. The plaintiff shall have exclusive use and possession of the marital home at 3 Kingsbury Road in Norwalk after the vacating of the property by the defendant. The defendant is given a period of 60 days in which to vacate the premises and obtain alternative housing. Should such housing be outside the children's school district, orders previously entered herein regarding visitation shall have to be modified. The order of custody is based upon the plaintiff residing at 3 Kingsbury Road in Norwalk after the defendant vacates that property. The provisions of Practice Book § 4046 providing for no automatic stay of this part of the court's orders shall apply. CT Page 7644
19. a. By way of assignment of estate pursuant to the provisions of § 46b-81 (a) of the General Statutes, the court orders the defendant's interest in the real property at 3 Kingsbury Road, Morwalk, Connecticut assigned to the plaintiff without any act on her part. The plaintiff, provided he can obtain suitable and satisfactory financing within ninety (90) days of this decree, shall pay to the defendant the sum of Sixty-five Thousand ($65,000) Dollars for her equitable interest in said property. (This has been computed in accordance with the computation in the plaintiff's financial affidavit less one half the Ten Thousand ($10,000) mortgage to counsel for the minor children and one half of the $9,900 owed to plaintiff's mother as reflected in Exhibit M.)
 b. In the event the plaintiff is unable to arrange suitable and satisfactory financing, the property shall be placed upon the market for sale. In this event the plaintiff shall make all necessary repairs and fix-up to the property providing as much of the labor as is possible without cost. The cost of such repairs and fix-up shall be deducted from the proceeds of sale before distribution to the parties. Decisions regarding listing price, listing broker and all other provisions regarding the sale shall be the plaintiff's. Upon sale of the property, brokerage fees, closing costs, reasonable attorney's fees, the mortgage upon the property, the $26,000 owed to plaintiff's mother, the $10,000 mortgage to Attorney Reath and the $9,900 owed to plaintiff's mother shall then be paid. The remaining proceeds, after reimbursement to the plaintiff for fix-up expenses and repairs, shall then be divided equally between the parties. Each party shall be responsible for one half of any capital gains tax that may be realized upon the sale of said property.
20. In the event the plaintiff refinances the property as provided in paragraph 19, infra, the plaintiff shall be wholly responsible for the Ten Thousand ($10,000) Dollars owed to counsel for the minor children for fees, the mortgage to his mother and the indebtedness to his mother.
21. In accordance with § 46b-62 of the General Statutes, the court allows Seventeen Thousand Eight Hundred ($17,800) as a fair and reasonable fee to Attorney Reath as counsel for the minor children. Of this amount, Four Hundred Fifty ($450) Dollars CT Page 7645 has been paid by the parties. The court orders that each of the parties pay an equal share of the balance after payment of the Ten Thousand Dollar mortgage. This shall be paid in the amount of $1507 to Attorney Patricia Reath and in the amount of $2,668 to the firm of Meyers, Breiner Neufeld. Such sums shall be paid within five (5) days of the refinancing of the property by the plaintiff and payment of the defendant's equitable interest in the property or five (5) days following the sale of the property.
22. The plaintiff shall pay to the defendant alimony in the amount of $1.00 per year terminable upon the earliest to occur of the following events: the death of either of the parties, the defendant's remarriage, or ten (10) years from the date hereof. This may also be modifiable or terminable in accordance with the provisions of § 46b-86 (b) of the General Statutes. There shall be no alimony to be paid by the defendant to the plaintiff.
23. The defendant shall pay to the plaintiff by way of support for the minor children the sum of Forty-five ($45.00) Dollars (Fifteen ($15.00) Dollars per week per child) commencing the first week that the defendant is residing elsewhere than 3 Kingsbury Road, Norwalk, Connecticut.
24. The defendant owes the plaintiff the sum of $715.00 as ordered by Petroni, J. on August 18, 1995. This represents the sum of $55 per month for 13 months. (See plaintiff's exhibit G.) This shall be paid to the plaintiff out of the defendant's share of her equity interest in the real property when sold.
25. The insurance check shall be paid over to the defendant in the amount of $1,000 for her jewelry. The balance of the proceeds shall be divided equally between the parties.
26. Each of the parties has his or her own automobile. The automobile of the defendant shall belong to her and she shall be responsible for all taxes and insurance expenses, etc., in reference thereto. The plaintiff's automobile shall be his and he shall be responsible for all taxes, finance charges and insurance expenses, etc., in reference thereto. Each party, to the extent they have a joint or mutual interest in each other's automobile, shall sign the appropriate documents to see to it that the other party has clear title to his or CT Page 7646 her respective car.
27. The contents of the marital domicile shall be divided between the parties on an aliquot basis, so that the children's things will go with them to the house where they shall live, and the general property and goods of the house will be divided so that each of them may set up housekeeping in their respective new living quarters. Should the children move from one parent's house to the other at any time, those items of personal property which are allocated to each child shall go with them when they move and shall remain the child's property. In the event of any dispute between the parties with regard to the division of tangible personal property, such dispute or differences shall be reviewed by the Family Relations Division by way of mediation. In the event there is still any dispute or differences, the parties shall return to court for further orders.
28. The plaintiff shall be entitled to take the children as dependents on his federal income tax in each year from 1994 forward.
29. Each party shall be solely responsible for his or her own credit card debt and other debts as reported in his or her financial affidavit except for the debts to Attorney Reath and to A L Telesco in the amount of $9,950 and Angelo and Lillian Telesco in the amount of $26,000, all as previously provided herein.
30. The savings account at Norwalk Savings Society shall be wholly the defendant's, free of any claim or demand by the plaintiff.
31. The savings bonds in the amount of $750 as reported in the plaintiff's financial affidavit shall be divided equally between the parties.
32. Each party shall pay his or her own attorney's fees.
Orders shall enter in accordance with the foregoing. Plaintiff's counsel shall prepare the judgment file.
EDGAR W. BASSICK, III, JUDGE CT Page 7647